FILED

JUL - 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2   Name   Casso     Santiago     G.     Jr.

3         (Last)                 (First)              (Initial)      *E-filing*

4   Prisoner Number   K-79110

5   Institutional Address   Deuel Vocational Institution, P.O. Box 600, Tracy, Ca. 95378-0600

6   =========================================================   **(PR)**

7                   **UNITED STATES DISTRICT COURT**     **CRB**

                 **NORTHERN DISTRICT OF CALIFORNIA**

8   Santiago G. Casso Jr.    **CV 08**     **3282**

9   (Enter the full name of plaintiff in this action.)

10               vs.               Case No. _____

                                   (To be provided by the Clerk of Court)

11   California dept. of Corrections

12   Secretary: James Tilton           **COMPLAINT UNDER THE**

                                   **CIVIL RIGHTS ACT,**

13                                      **Title 42 U.S.C § 1983**

14

15   (Enter the full name of the defendant(s) in this action)

16   *[All questions on this complaint form must be answered in order for your action to proceed.]*

17   I.     Exhaustion of Administrative Remedies.

18        [**Note:** You must exhaust your administrative remedies before your claim can go

19        forward. The court will dismiss any unexhausted claims.]

20        A.     Place of present confinement   D.V.I., P.O. Box 600, Tracy, Ca. 95378-0600

21        B.     Is there a grievance procedure in this institution?

22               YES (✓)    NO ( )

23        C.     Did you present the facts in your complaint for review through the grievance

24             procedure?

25               YES (✓)    NO ( )    (see Exibit-A)

26        D.     If your answer is YES, list the appeal number and the date and result of the

27             appeal at each level of review. If you did not pursue a certain level of appeal,

28             explain why.

COMPLAINT              - 1 -

1.  Informal appeal *Appeal #07-1503 #07-00055 (see exhibit-A) submitted 6/01/08*
    *informal level Administration decision was to By-pass*

2.  First formal level *On 8/26/07 @ Avenal state Prison by telephone*
    *in error administration/Coordinator incorrectly interpetted a wit-*
    *hdrawl of Appeal #07-00055*

3.  Second formal level *on 9/4/07 appeal was mistakenly underst-*
    *ood as withdrawn.*

4.  Third formal level *@ Third level it was explained as "withdrawn" was*
    *an error phone call misunderstood as withdrawn appeal and*
    *forwarded to directors level 9/29/08 still no response. Exhibit-R5*
    *show it was rejected at directors level.*

    E.    Is the last level to which you appealed the highest level of appeal available to
you?

        YES (X)    NO ( )

    F.    If you did not present your claim for review through the grievance procedure,
explain why._____

_____

_____

II.    Parties.

    A.    Write your name and your present address. Do the same for additional plaintiffs,
if any.

*Santiago G. Casso Jr., Devel Vocational Institution, P.O. Box 600,*
*Tracy, Ca. 95378-0600*

_____

    B.    Write the full name of each defendant, his or her official position, and his or her
place of employment.

*California dept. of Corrections Secretary: James Tilton, place of*

COMPLAINT          - 2 -

1   Employment: 1515 5th, Sacramento, Ca. 95814

2   _____

3   _____

4   _____

5   III.   Statement of Claim.

6       State here as briefly as possible the facts of your case.  Be sure to describe how each

7   defendant is involved and to include dates, when possible.  Do not give any legal arguments or

8   cite any cases or statutes.  If you have more than one claim, each claim should be set forth in a

9   separate numbered paragraph.

10   The Plaintiff became a 290 registrant over 20 yrs. ago for his conduct with an ad-

11   ult women in a public "bar" during business hours, paroled and eventually discharged

12   his CDC.# and parole. Plaintiff has proven to be a non-repeat offender nor has

13   he ever again exhibited any criminal behavior that would lead any reasonable

14   person to believe would lead to similar conduct that made the Plaintiff a 290

15   registrant over 20 yrs ago. The Plaintiff is not now or ever been in any ment-

16   al health program. The Plaintiff is now on parole for a vehicle violation of

17   D.U.I., V23152(A) charge and presently in custody for a parole violation

18   with a release date of 7/18/08 and a discharge date of 2/18/09, Plaint-

19   iff is presently incarcerated at Devel vocational Institution, P.O. Box 600,

20   Tracy, Ca. 95378-0600, "Jessica's Law" on 10/01/06 Proposition 83 was

21   passed (see attachment) con't. See brief, Memorandum Points and

22   Authorities for immediate stay of policy No. 07-36.

23   IV.   Relief.

24       Your complaint cannot go forward unless you request specific relief.  State briefly exactly

25   what you want the court to do for you.  Make no legal arguments; cite no cases or statutes.

26   The Plaintiff pleads for preliminary injunction, to be allowed to stay at his residence at

27   37461 cherry st, APT-B, Newark, Ca. 94560 ,(510) 785-7484 and to remove the ankel

28   bracelt until this action and proceedings are adjudicated and completed.

COMPLAINT                              - 3 -

Attachment

**III.** Statement of Claim. Con't.

Plaintiff was released from custody on January 20th, 07 and a "hold" for 45 days was placed on him to be interviewed/ screened by two mental health doctors as a S.V.P. (sexual violent Prediter). At this point Plaintiff had obtained a copy of his C.O.R.I. or "rap" sheet to correct the inaccuraceys and complete the incompleteness of dispositions and delite charges never removed where they should of. The Plaintiffs "rap" sheet was in great error, incomplete, inaccurate and was used by the mental Health doctor at these interviews even after Plaintiff stated how inaccurate this document is and exibited his "copy". Never the less this piece of contaminated evidence was used as a basis to score the Plaintiff "high" Risk?

Even after 20 yrs of non-repeat offender, the Mental Health doctor did state repeat offenders do repeat at 5 yr intervals Plaintiff has 20 and at 55 yrs of age, "mobility Impaired", impotent due to Beta-blockers or atenalol for high blood presure (50 mg Twice/day) legally blind @ 20-200 with Myopia uncorrected requireing a complete hip-replacement requireing an appliance for movement that is less Then 70 yards befor pausing/resting to continue is evaluated as a "high" Risk S.V.P.?

Then @ 4/06/07 while on parole and at the San leandro Parole office with Parole Agent Brett Everidge of Alameda County Parole Region II a G.P.S. (Global Positioning Sattillete) ankle bracelet

was attached to the Plaintiff even after Febuory
09, 07, a federal Judge ruled that the G.P.S.
requirement does not apply to persons who were
convicted prior to the effected date of the
statute and who were paroled, given probation,
or released from custody prior to that date let alone
as Plaintiff's crime was 20 yrs ago was released
and discharged from parole for that controlling
"290" charge, granted on parole again but for
a completly different controlling charge of D.U.I.,
V23152(A). Then in 2007 september the plaintiff
was given 45 days to move from his residence
of 37461 Cherry St., APT-B, Newark, Ca. 94560
(510) 795-7484 because the Plaintiff was within
2,640' of a "park". This park is in fact the
Newark Police dept. where the Plaintiff registeres as
a 290 registrant and out-side this police station
is a bench and swing set where staff of the
Police dept. step out side during breaks and Lunch
The Plaintiff is approx. 500' of this perimeter.
   The Plaintiff is on Disability Benifits as an
handi-capped individual at $856.00 per month
For rent, food, clothing, transportation, elec., gas,
heating, furniture, kicthen utinesills all the basics
of life that @ $856.00/ month is not the amount
of money that can easily find housing, However
at 37461 Cherry st, APT-B, Newark, Ca. 94560,
(510) 795-7484 Plaintiff has managed to not just

2 of 4

Locate such a place but it is Americans with Disability Compliant being removed per proposition "83" would add as a hardship financially and physically to the Plaintiff for an action that occured 20 yrs ago it appears the Plaintiff is again being punished for a crime he paid his dept. to for society and is now re being punished on "Ex Post Facto" exist here a violation of our Constitution that this new law is placing a Financial Burden and a Burden on the limited housing available for ADA-individuals as the Plaintiff.

the Plaintiff has always maintained an address of 42836 Gatewood ST. Fremont, Ca. 94538, (510) 226-1516 since 1954 until the death of Plaintiffs father in 2007 20th of January had Plaintiff ever had to live anywhere else this residence was across the street of an elimentary school grades between Kinygarden to 4th grade and after evaluation of parole agent and supervisors this was not a problem when taking into account the specifics of Plaintiffs 1988 plea bargain that required Plaintiff to register as a 290.

Plaintiffs conduct to any reasenable person never reflected then or 20 yrs later and now conduct that would be "Red Flags" "heads-up" to think would lead to similiar conduct again as what occured in 1988 until now with Prop. 83 The plaintiff is 400' to 500' within this perimitar of a police stations part, and Plaintiff has now been

3 of 4

disignated as a "S.V.P" prior Plaintiff was placed
on parole's minimume parole and reported to
parole Monthly by mail in The early 1990 it
was 1993.

1

2

3

4

5  I declare under penalty of perjury that the foregoing is true and correct.

6

7  Signed this ___ 1ˢᵀ ___ day of ___ July ___, 20 08

8

9

10  (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                    - 4 -

Santiago Casso
-19110
V.I., P.O. Box 600
Icy, Ca. 95378-0640
3-Per

United States District Court
of Northern California

Santiago C. Casso Jr                           CASE no. _____
            Plaintiff
                vs.
California Dept of Corrections,    Memorandum of points and
Secretary James Tilton *           Authorities and Application for immediate stay
   Respondent/Defendant            of California dept. of Corrections and Rehabilitation
                                   Policy No. 07-36

                    Immediate Action Requested
                         Introduction

1. Petitioner is a parolee who is subject to sex offender registration
requirements under Penal Code Section 290 and to a provision of
Proposition 83 (Sexual Predator Punishment and Control Act, here-
after "SPPCA"), codified in Penal Code Section 3003.5 subdivision
(b), that bars him from residing within 2,640 feet of a pub-
lic or private school or park where children regularly
gather. Petitioner seeks immediate relief from Respond-
ent's policy No. 07-06 enforcing this draconian provisi-
on of the SPPCA, which forces Petitioner to make an un-
lawful and unconscionable choice between leaving his
home, becoming homeless or violating a newly added
condition of parole that will result in imprisonment
for a parole violation. Petitioner seeks an order tem-
porarily and permenently enjoining Respondent from
enforcing this unlawful and unconstitutional provis-
ion through parole conditions.

   2. More than nine months after the SPPCA became
effective, Respondent began to enforce Penal Code Sect-
ion 3003.5 through a special condition of parole.
Under this new policy all parolees who are required

1 of 39

register pursuant to Penal Code Section 290 will viol-
ate parole if they "reside within 2,640 Feet (This is the
Plaintiffs distance and is the distance that the Plai-
ntiff will continue to use in lieu of the 2,000 Feet,
2640 Feet per Parole Agent Brett Everidge of San Leandro
office Parole Region II) of any public or private school, or
park where children regulary gather". The practical effect of
This parole condition is to prevent petitioner from living in
any residence or home, since virtually all affordable residential
areas of the county in which he is required to live are within
the 2640 Feet/Foot limit. Petitioner has been notified by
parole authorities That if he violates this condition of
parole, he will be arrested and parole will be revoked.
3. Respondent's application of the SPPCA subjects Petitioner
to an unreasonable parole Condition and to retroactive and
ex post facto application of a penal Law. Respondent's policy
also violates Penal Code Section 3 and misinterpets Section
3003.5, subdivision (a). Petitioner requests That This Court
immediately enjoin the enforcement of this parole Condition,
issue an order to show cause and decide the merits
of his petition.

### Parties

4. Petitioner Santiago Casso #K-79110 is a parolee of The
California Department of Corrections and Rehabilitation
(the CDCR), currently residing in San Joaquin County.
As an Indigent Inmate for a Parole violation and
a release date of 7/18/08, @ Devel Vocational

Institution, State Prison, P.O. Box 600, Tracy, Ca. 95378-0600

5. Defendant James Tilton is The Secretary of the Department of Corrections and Rehabilitation. As the Secretary, Mr. Tilton is ultimately responsible for the operations of the Department, including The parole policies and practices at issue here.

<u>Statement of facts</u>

6. The SPPCA was passed by a voter-backed initiative as Proposition 83 on November 7, 06. Among other Things, The law amended Penal Code Section 3003.5, subdivision (b) to prohibit persons required to register as sex offenders in California from residing within 2,640 feet of any public or private school, or park where children gather, and allows municipal Jurisdictions to impose even harsher restrictions.

7. Petitioner is required to register as a sex offender pursuant to penal Code Section 290 due to a conviction/ Plea bargain over 20 years ago for The offense of 261 or for his conduct with an adult women in a public bar during buisness hours and not a repeat offender on the date of 5/16/88 and released on parole for The Sex offense on The date of 6/18/90, since then Petitioner has discharged Parole and is presently in Prison For a D.U.I V23152(A)

8. Petitioner is currently on parole for The crime of D.U.I., V23152(A) and with a controling discharge date of 2/18/09 (see exibit-P1)

°f39

9. While on parole, Petitioner resided, is residing as follows:
37461 Cherry St, Apt-B, Newark, Ca, 94560 (510) 795-7484.
This has been the home of petitioner for the past 30 years
living with the residential manager and older sister
and brother-in-law a home that is Americans with
disabilitys Compliant and affordable housing for the
Plaintiff who lives on disability insurance or $856.00
Per Month. see exhibit-P2 for financial statues as an Indegent
Prisoner presented is a certified copy of Plaintiffs Trust Account
statement and upon release his finances of $856.00 per
Month, see exibit-R3 reflex's Plaintiffs disabilitys as
permenent "mobility Impaired" and vision or "legally
blind" with expert evaluation by Trained and licensed
Medical staff, presently Plaintiff cannot return home due
to the Newark Police dept. where Plaintiff registars has
a small park setting next to its building with a small
bench where employees, Detectives, police officers rest
for breaks, Plaintiff is homeless and placed in an industr-
rial area of Hayward by his parole Agent with no
access to public transportation or grocery stores for
Food, Plaintiff is stranded due to his limited Mobility
of less then 70 yards of ability to walk before complete
incapacitie to stop functioning with walking.
10. On the date of Sept. 15, 07, petitioner was served
with a modified condition of parole and informed
that his residence described in #9 was in violation
of Section 3003.5 subdivision (b). Petitioner was

informed by Respondent via parole Agent of record Brett Everidge that he had to comply with the conditions of parole by finding and moving to a new residence more then 2640 straight of line feet from a school or park. Respondent informed petitioner that he had until the date of oct. 30, 07 to find compliant housing. Respondent informed petitioner that failure to comply would result in his imminent arrest. Petitioners Copy of this notice is not accesible to the plaintiff until his release.

11. After Petitioner was given notice of this parole condition, the following events occured: Housing with family was a clean and sober alcohol/drug free inviorement and loving home, Rent was affordable and ADA-compliant for plaintiff who is Mobility and vision Impaired (see exibits-P3). Once Ordered to leave Petitioner became homeless and begain to self-medicat alcohol for chronic pain, then placed in emergency hospital or intensive care units for dehydration, depression, suicide tendencys (see exibit-P4 from John George (Alameda County Medical Center) Psychiatric Pavillion) Seperated from family per Parole Agent of Record, Brett Everidge of Region II @ San leandro office on 2/20/08 approx. via phone Plaintiff was not to stay to visit former residence or family and Ordered to leave. Plaintiff has experienced sleeping in alleys, under trees, robbed then return to custodys became more Frequent.

12. It is Petitioner's belief that almost every residential neighborhood in the area in which he lives is off

6 of 39

limits. Defendant has provided little to no assistance to Plaintiff to find compliant housing, (once parole Agent Brett Everidge placed Plaintiff into an industrial Area of Hayward where no public transportation was available for Miles and no grocery store location for even further Miles Plaintiff was stranded with manner to leave This area). Plaintiff has not been informed of areas in his county where affordable compliant housing may be found. IT is also Plaintiffs understanding that defendant will not grant an out-of-county Transfer to plaintiff to enable him to come into compliance affordable with the housing restrictions.

13. Plaintiff has not filed any other petition, motion or action in any other court concerning This issue.

14. Petitioner has made attempts to pursue administrative remedies, see exibit-P5, Inmate/Parolee Appeal form #07-1503, 07-00055, Plaintiff submited The final phases to The Directors of Corrections, P.O. Box 942883, Sacramento, Ca., 94283-0001, ATTN: chief, Inmate Appeals on 1/20/08 and never recieved any response or remedies, See first page of exibit-P5 Parolee Appeals tracking System-level III and "Disposition"... Appeal" only Appeal Original Accepted at DL Review and Appeal not been Accepted at Directors level. See Admi- nistrative "602" appeal form exibit-P6

Petitioner/Plaintiff wishes to state that The futile attempts of The use of administrative remedies to challedge a statue is futile. (see Cal. Code Reg., TiT. 15, § 3084.7 subd.(g).)

of 39

## Prayer for Relief

Wherefore, Plaintiff prays that this court:

1. Issue an immediate stay of enforcement of California Department of Corrections and Rehabilitation Policy No. 07-36, and any equivalent policy adopted for the purpose of enforcing the residency restrictions of Penal Code Section 3003.5, subdivision (b) as a parole condition against Plaintiff

2. Issue an Order to show cause why relief should not be granted,

3. Temporarily and permanently enjoin Respondent from applying Penal Code Section 3003.5, subdivision (b), which imposes a condition of parole that prohibits Plaintiff from residing within 2,640 feet of any public or private school, or park where children regularly gather,

4. declare the rights of parties, and

5. Grant any and all other relief necessary to a just resolution of this case.

6. $200,000.00 In damages (exemplary, punitive, compensatory)

Date: 7/01/08

Respectfully Submitted

Santiago G. Casso Jr.
(Print name)

Plaintiff (signature)

# Contentions

I. Emergency Temporary Relief is required to prevent Irreparable injury.

II. Plaintiff should not be required to exhaust Administrative remedies because those remedies are inadequate and futile and that those attempts of using the administrative that Plaintiff has and has attached to this complaint without any change or remedies be accepted as Plaintiff exibits honest efforts to the administrative remedies available.

III. The Residency restriction is invalid as it is an unreasonable Parole Condition.

IV. The residency restrictions of proposition 83 are impermissibly vague and violate Plaintiffs fundemental right to due process

V. The proposition 83 residency restriction violates Section 3 of the California Penal Code which prohibits Retroactivity of penal statutes

VI. The proposition 83 residency restriction violates the ex post facto clause as applied to persons who committed Sex offenses before the november 8, 06 effective date.

VII. The imposition of the residency requirements on persons released from non-Sex offense terms is not authorized by proposition 83

2 of 39

<u>Verification</u>

I, Santiago Casso, STATE:

I am the petitioner/plaintiff in this action. I have read the foregoing petition for relief (1983), and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at the location of San Joaquin County city of Tracy address: Deuel Vocational Institute, P.O. Box 600, Tracy, Ca. 95378-0600, on the date of   7/01/08   .

Santiago C. Casso Jr.
(signiture)

Santiago C. Casso Jr.
(print name)

3 of 39

## Memorandum of Points and Authorities
### In Support of Complaint and application for Immediate Stay

I. Emergency Temporary relief is required to prevent irreparable injury.

Plaintiff request that this court immediately issue a stay of enforcement of the California dept. of Corrections and Rehabilitation (CDCR), Policy No. 07-36, which purports to enforce the 2,640 foot residency (to the Plaintiff other Parolees are at 2,000 Feet) restriction codified at Penal Code Section 3003.5, subdivision (b) against Petitioner. The statue and the CDCR's interpetation of the statute as applied to the Plaintiff are in violation of California law, the California Constitution and the Constitution of the United States. Because Plaintiff faces immediate and irreparable injury — incarceration or homelessness to deep depression with tendencys to suicide - Plaintiff hereby seeks a stay preventing the implementation of Section 3003.5, subdivision (b).

The court is authorized to issue a stay pursuant to a pending Complaint. Indeed, the California Supreme Court has recently indicated that it is appropriate to ~~stay~~ enforcement of the residency provision of Section 3003.5, Subdivision (b) and CDCR Policy No. 07-36 during the proceedings of a 1983. these same provisions ~~(b) against the four p~~ are currently being challenged by parolees in the California Supreme Court in In re E.J.,

1 of 39

No. S156933; In re S.P., No. S157631; In re J.S., No. S157633 and In re K.T., No. S157634. On October 10, 07, the Court stayed enforcement of Section 3003.5, Subdivision (b) against four named petitioners in those cases pending the final determination of their for writ of habeas Corpus. (See docket, In re E.J, No. S156933 at www.courtinfo.ca.gov.) On October 15,07, the Court denied a request to extend the stay to all parolees required to registar under section 290; however, the Court did so without prejudice to the filing of actions for declaratory and injunctive relief in the superior courts by other individual parolees affected by section 3003.5, Subdivision(b). (Ibid) the California Supreme courts decision to stay enforcement of section 3003.5, subdivision(b) while habeas proceeding are pending was sound and should be followed by this court in the current case.

Issuance of a stay is also well within this courts authority, as "[i]nherent in the power to issue the ~~stay is the power~~ "stay" is the power to ~~fasten~~ fashion a remedy for the deprivation of any fundamental right which is cognizable." ~~Ibid~~

### A. Petitioner has Demonstrated a Strong likelihood of Success on the Merits

As discussed in the arguements set forth in the following sections of this Memorandum of Points and Authorities, the 2,640-foot residence restriction and cdcr's interpetation of that restriction as applied to petitioner, suffer from ~~so~~ fatal constitutional, statutory, and common

'InF39

law flaws. Therefore, Petitioner/Plaintiff has established a strong likelihood of success on the merits.

**B.** Petitioner is Certain to suffer Irreparable Harm. Plaintiff faces either homelessness or certain incarceration if he fails to comply with the residency restrictions. Because the 2,640-foot restriction is so exspansive that it bars Plaintiff from residing in nearly all residential neighborhoods in his county of parole, it is virtually impossible for Petitioner to comply with section 3003.5, subdivision (b) as interpeted by CDCR. If those provisions are enforced during the pending proceedings, Plaintiff will be irreparably harmed. Mental Stress due to homelessness, seperation from home and family resulted in hospitilization on 2/28/08 @ John George Psychiatric Medical Center for Manic depression and suicide. Plaintiffs chronic pain in lower back was further aggravated by plaintiffs needs required Plaintiff to walk beyon 45 feet/Yards has induced undue discomfoer, pain and suffering of an already diagnosed "spinal stenosis" requiring a complete hip joint replacement, Plaintiffs mental state and chronic lower back pain lead to self medication with alcohol abuse and frequent return to custodys as short as 20 hrs after Release for alcohol use.

**C.** The Balance of Harms favors an injunction Because a stay will not Endanger Public Safety.

While the harm to Petitioner of enforcing Section 3033.5, Subdivision (b) is certain, the benefit to Defendant and the public is highly speculative at best. There is no evidence

2 of 39

That This residency restriction will prevent any future crime. Indeed, The CDCR has not alleged That Plaintiff has violated his parole in any way other than non-compliance with The residency requirements. the absence of a clear threat to public safety if Plaintiff is allowed to stay in or return to his home is illustrated best by The fact That Defendant waited more Than nine months after passage of proposition 83 before making any efforts to enforce The residency restriction as a parole condition against any parolee. A delay of a few more Months to resolve The Serious legal issues presented by This case will do no harm on lets not forget The Plaintiff does discharge his parole 2/18/09 as well.

II Plaintiff Should not Be Required To Exhaust Administrative Remedies because Those Remedies Are Inadequate and futile (Plaintiff has submitted his results to using his Administrative remedies, however)

Generally, prisoners must exhaust administrative remedies before filing 1983 complaints. The exhaustion requirement does not apply where administrative remedies are futile or inadequate. (In re Dexter (1979) 25 Cal. 3d 921, 925; In re Reina (1985) 171 Cal. App. 3d 638, 642; In re Serna (1978) 76 Cal. App. 3d 1010, 1014)

Here, exhaustion is not required because The remedies are futile and inadequate. The remedies are futile because Plaintiff is challenging the legality of a

statute that Defendant does not have the authority to alter or suspend. Moreover, Plaintiff can be certain that any appeal would be denied on the CDCR's established policy of enforcing Penal Code Section 3003.5, subdivision(b). The remedies are inadequate because Plaintiff is in danger of imminent arrest or homelessness. There is simply not enough time to process an administrative grievance before he is irremediably affected by the CDCR's policy. (See Cal. Code Reg., Tit. 15 § 3084.7. subd. (g) [providing for review by CDCR final level] see attached administrative remedies results anyway.

## III The Residency Restriction is Invalid As it is an Unreasonable Parole Condition

The Plaintiff has been served with a modified condition of parole which directs him to comply with section 3003.5, subdivision(b)'s restriction on residing within 2,640 feet of a park or school where children regularly gather (Even if ~~Defendant~~ Plaintiff accepted the modified parole condition, he is not barred from subsequently contesting ~~that is~~ a condition that is unduly restrictive. See People v. Bauer (1989) 211 Cal. App. 3d 937, 940; People v. Dominguez (1967) 256 Cal. App. 2d 623, 629). Such a condition is unreasonable and invalid. (In re Stevens (2004) 119 Cal. App. 4th 1228, 1234 ["[p]arole conditions, like conditions of probation, must be reasonable since parolees retain constitutional protection against arbitrary and oppressive official action"] [citation omitted]; Cal. Penal Code § 1203.1, subd. (j) [conditions

of probation must be reasonable"].)

A condition that "requires or forbids conduct which is not in itself criminal" is invalid when it: (1) has no relationship to the crime of which ~~is not itself criminal is~~ the offender was convicted, and (2) requires or forbids conduct which is not reasonably related to future criminality. (People v. Dominguez, (1967) 256 Cal. App. 2d 623, 627-28; People v. Bauer (1989) 211 Cal. App. 3d 937, 942 [citing People v. Lent (1975) 15 Cal. 3d 481, 486]; People v. Kiddoo (1990) 225 Cal. App. 3d 922, 926; In re Bushman (1970) 1 Cal. 3d 767, 776-777.) The Dominguez/Lent analysis is used to evaluate the validity of conditions that have been imposed as "matter of law". (See e.g., In re Naito (1986) 186 Cal. App. 3d 1656, 1661 [applying Lent test to assess validity of an administrative regulation applied as a condition of probation].)

Where, as here, parole conditions impinge on a constitutionally protected right, an even stricter scrutiny applies. In such instances, the condition must be so carefully tailored that it is "reasonably related to the compelling interest in reformation and rehabilitation." (In re White, 97 Cal. App 3d 141, 146 (1979); see also People v. Painter (1984) 151 Cal. App 3d 1128, 1135 ["where a condition of probation impinges upon the exercise of a fundamental right and is challenged on constitutional grounds we must additionally determine whether the condition is impermissibly overbroad"].) Indeed, when viewed under the strict scrutiny lens, a parole condition only passes muster if it is

of 39

"narrowly drawn and specifically Tailored to the individual probationer". (In re Babak (1993) 18 Cal. App. 4TH 1077, 1084 [emphasis added]; see also Stevens, 119 Cal. App. 4th at 1237 [striking Total internet ban as a condition on sex offenders parole because "it is not enough to show That The Government's ends are compelling; the means must be carefully Tailored to achieve those ends"].)

A. The Residency Restriction Impermissibly Impinges On Constitutionally protected Rights.

1. The Residency Restriction Impinges On petitioners Fundamental Interests In Residing In his Homes and/or living with his family.

Petitioner/Plaintiff has a substantial interest in residing in his home and/or with his family. The Supreme Court has repeatedly held That "Fourteenth Amendment liberty includes The right... to live and work where [one] will." (washington v. Glucksberg (1997) 521 U.S. 702, 760 [Kennedy, J., Concurring]; Moore v. East Cleveland (1977) 431 U.S. 494.) In cleveland Board of Education v. LAfleur (1974) 414 US. 632, 639-640, The Court held That "feedom of personal Choice in Matters of... family life one of the liberties protected by the Due Process clause of the fourth Fourteeth Amendment". Indeed, These interest are "fundamental". (Griswold v. Connecticut (1965) 381 U.S. 479 495 [Goldberg J., Concurring]; Moore v. City of East cleveland (1977) 431 U.S. 494, 498.) In Meyer v. Nebraska, 262 U.S. 390, 399 (1923) The court held it is "[w]ithout drough doubt" That among the liberty interest protected by the fourteenth Amendment is the right "to... establish a home"

the California Constitution's guaratee of the inalienable right to privacy likewise protects an individual's right to live in one's home, and with whom one chooses to live, including one's family. (See Cal. Const. Art I, § 1; White v. Davis (1975) 13 Cal. 3d 757, 774 ["the right of privacy.... protects our homes, our family's"]; Robbins v. Superior Court (1985) 38 Cal. 3d 199, 213 [in-kind benefit program infringed on right to privacy because it "Compels the individual to give up his home... [and] force[s him] to live in a particular location without the freedom to choose his own living companions"]; city of Santa Barbara v. Adamson (1980) 27 Cal. 3d 123, 130 [Constitution protects 'right of privacy not only in ones family but also in ones home"]; Tom v. city and county of San Francisco (2004) 120 cal. App. 4th 674, 680, 686 [recognizing "autonomy privacy interests in choosing the persons with whom a person will reside" and that home is "a place that is traditionally protected mostly strongly by the constitutional right of privacy."]; Park Redlands Covenant Control Committee v. Simon (1986) 181 Cal. App. 3d 87, 877 [reconizing privacy rights to choose with whom one lives and to live as a family]; cf. Schmidt v. Superior Court (1989) 48 Cal. 3d 370, 389-90 [rejecting privacy challenge on grounds that policy, inter alia, does not "purport to compel the seperation of parent and child or to preclude the family from living together in an entire city or neighborhood [.]"] [internal citations omitted].)

Both the U.S. Supreme Court and California courts reconize an individual's "Substantial right" to retain property. (Mathews v. Eldridge (1976) 424 U.S. 319, 322; see also Greene v. Lindsey

(1982) 456 U.S. 444, 450-51 ["The right to continue residence in [one's] home" is a "significant interest in property" protected by the Fourteeth Amendment]; People v. Beach (1983) 147 Cal. App. 3d 612, 620 ["The right to aquire, own, enjoy and dispose of property is also a basic fundamental right guaranteed by the Fourteeth Amendment of the United States Constitution."]

This right applies to renters as well as to home-owners. In Green v. Lindsey (1982) 456 U.S. 444, the Supreme Court held that renters had a due process right to adequate notice and a hearing before they could be evicted from their homes. The court held that "The right to continued residence in [one's] home" is a "significant interest in property" protected by the Fourteeth Amendment. (Id. at 450-451; cf. Mathews v. Eldridge (1976) 424 U.S. 319, 322 [reconizing property interest in Social Security disability payments].)

California similarly reconizes an individuals interest in their rented property as a "substantial" - even a "sacred" - right. (Mendoza v. Small Claims Court of Los Angeles (1958) 49 Cal. 2d 668, 672 ["Nor can there be any doubt that possession is a sacred tenant is a substantial right. The right to retain property already in possession is as sacred as the right to recover it, when dispossessed."]; see also Arrieta v. Mahon (1982) 31 Cal. 3d 381, 389; Cal. Const. Art I, §§ 1 and 7.)

The Court of Appeals has specifically reJected conditions placed on a probationers residence that impinge on constitutional etitlements to travel and freedom of association because rathere then being "narrowly Tailored to interfere as little as possible with these important rights. The

restriction was extremly broad. (Bauer, 211 Cal. App. 3d at
944.) Similarly, in People v. Beach (1983) 147 Cal. App. 3d 612, 620,
the Court of Appeals struck a condition of probation held that it
held amounted to banishment-that the probationer "relocate herself
from the community where she lived in her own home for 24 years".
The court found that the community condition impinged on the
probationer's right to intrastate travel, which, in turn, touched
on other rights, holding:

> The right to aquire, own, enjoy and dispose of property
> is also a basic fundamental right guaranteed by the
> fourteeth amendment to the United States Constitution.
> Intrinsic and integral to this right is the basic ability
> to possess one's own property, could it be rationally
> argued that the enjoyment of the fruits of property
> ownership does not directly depend upon the owners
> free and unimpaired access to, and possession of,
>     said property.

(Id. at 622 [italics omitted]; c.f. In ex parte Scarborough (1946)
76 Cal. App. 2d 848, 850 [striking a condition of probation that required
the probationer to leave counties where he had been convicted and
served his sentence since the "Same principle which prohibits
the banishment of a criminal from a state or from the
United States applies with equal force to a county or city"];
People v. Blakeman (1959) 170 Cal. App. 2d 596, 597 [condition
of probation that provided for suspended sentence if
probationer absented himself from county was struck
down because it "was beyond the power of the court

to impose banishment as a condition of probation".)
Here, Plaintiff possesses "significant" and "Fundamental"
Constitutionally protected liberty and property interest
in continuing to reside in his home. Since the residency
restriction requiring him to abandon his home impinges
on his constitutionally protected rights, it must meet the
heightened requirement that it is not overbroad and is
reasonably related to the state interest in reformation
and rehabilitation. (Meyer v. Nebraska (1923) 262 U.S.
390, 399; In re white (1979) 97 Cal App. 3d 141, 146

 2. The Residency Restriction Is Overbroad
the residency restriction is manifestly overbroad. "Particular-
ized Conditions of probation should be directed toward rehabili-
tation rather then reliance upon some general condition
which utilizes a mechanized mass treatment approach."
(In re white, 97 Cal.App.3d at 151.)
 In This case, Plaintiff is being required to leave his home for
the simple reason that he lives within 2,000 feet of a school
or park (next to a police station @ Newark, Ca.) where children or
employees of this police station regularly gather.
Plaintiffs Sex Offense occured in a "Public Bar" during
buisness hours and did not involve minor children but
an adult women older then the Plaintiff, Plaintiff
is a non-repeat offender and his case occured
over 20 yrs ago and it has been 20 yrs since
he's been in a bar as well.
 In contrast, other states that have enacted Sex

offender residency restriction have adopted narrow
provisions that restrict application of the residency restri-
ctions ~~have adopted~~ to a narrowly tailored population
of potential recidivists considered "High Risk." (See e.g.
Ark. Code Ann § 5-14-128(a) [applying residency restrictions
only to "Level 3" and "Level 4" offenders].)

   Secondly, the 2,640-foot restriction is so unreasonably
broad that ~~the~~ it makes virtually every residential neighborhood
in the country in which Plaintiff lives off limits. Indeed, the SPPCA
is significantly broader and more punitive in this manner than
any other sex offender residency restriction in the country.[2]
[2] see Jodi Schwartzberg & Annie Lo, "Law and Policy of Sex
Offender Residency Restrictions: An Analysis of Proposition
83" (Public Law Research Institute, fall 2006) at 1-2, available
at www.uchastings.edu/?pid=4490 ("Compared to residency
restrictions adopted in other states, California's proposed residency
restrictions is notable particularly for its breath.... The Proposition's
2,640 foot ban is significantly more restrictive than

• the SPPCA's 2640-foot residency restrictions zones are
amongst the largest in the country. (Cf. GA. Code Ann. § 42-1-15
[creating 1,000 foot residency restriction zones]; 720 Ill. Comp.
Stat. § 5/11 - 9.3 (b-5) [500-foot residency zones].)

• The SPPCA applies to every person required to register as a sex
offender in California, regardless of the type of previous conviction,
assessment of dangerous, or risk of re-offending. (Cf. Ark. Code
Ann. § 5-14-128(a) [applying residency restrictions only to level 3
and 4 sex offenders]; Fla. Stat. Ann. § 947.1405 (7)(a)(2) [Res-

of 39

tricting residency around schools and parks only if victim was a minor]; Ind. Code § 35-38-2-2.2 [Providing Judges discretion to lift residency restrictions]; Iowa Code § 692A.2A(1) [restricting Residence only were victim was a minor]; Ky. Rev. Stat. § 17.545(5) [limiting residency restrictions only to adult offenders].)

- The SPPCA residency restriction applies for life. (cf. Tex. Crim. Pro. Code Ann § 42.12, Sec. 13B(a) [imposing residency restriction only during probation and Supervised release]; GA. Code. Ann § 42-1-15, 42-1-12(g)(2)(B) [relieving certain residency restrictions after 10 yrs].)

- The SPPCA does not contain a grandfather clause to protect the rights of those registrants who already own or rent their homes in restricted areas. (cf. Iowa Code § 692A. 2A(4)(d) [Providing that new sex offender residency restrictions shall not apply to residences established when the statue went into effect].)

   Since it is so overtly broad and not conductive to assisting the government in rehabilitating and preventing recidivism, it is an understatement to say, that this residency restriction is a far cry from the requirement that it be a "focused restriction". (In re Stevens, 119 Cal. App. 4th at 1239.)

Many other states bans... the ban could effectively exclude offenders entire cities and counties in California.").)

   C. The Residency Restriction is Not Reasonably Related to, and actually Undermines, Any Compelling State ~~Enterstate~~ Interest in Reformation and Rehabilitation.

   The residency restriction does nothing to assits the government in its effort to prevent recidism and to rehabilitate offenders.

The restrictions does not prevent offenders from going into the restricted areas, merely from residing in them. On the other hand, forcing sex offenders to leave their homes actually undermines public safety by driving sex offender registraints underground and seperating others from existing family, employment, support, and rehabilitation networks. Studies of sex offender residency restrictions enacted in other states demonstrate that residency laws which effectively ban ex-felons from living in (but not frequenting) certain areas where children congregate have no correlation to reduce incidents of sexual assault and actually increase the likelihood of recidism among those offenders banished from their communities. (see, e.g., No Easy Answers, Sex Offenders in the U.S. Human Rights Watch (Sept. 2007) available at www.hrw.org/reports/2007/us0907/9.htm. Efforts to rehabilitate offenders and to minimize the rate of re-offending are much more successfull when offenders are employed, have family and communitie connections, and have a stable residence. Futhermore, homelessness only worsens recidivism and rehabilitation efforts. Where offenders are forced to become homeless, they face additional hurdles in avoiding recidivism. Sleeping in public places, for instance, may result in a misdemeanor offense. (see Cal. Penal Code § 647 subd. (j) ["Every person who commits any of the following acts is guilty of disorderly conduct, a misdemenor:... who lodges in any building, structure, vehicle, or place, whether public or private, without the permission of the owner

3F39

or person entitled to the possession or in control of it."].)

In Sum, the goals of rehabilitation and preventing re-offense are severly impaired by the residency restriction, which compromises the safety of children by flying in the face of well-established tenets of Corrections Policies.

B. Even If the Restriction were not subject to strict Scrutiny Review, It Is Invalid because It Is Not reasonably Related to the offense and there is no Reasonable Connection Between the Condition and Prevention of future criminal Acts.

Even if the restriction did not impinge upon a Constitutional right, which it clearly does, the residency restriction is invalid as an unreasonable conditional under the Dominguez/Lent test. (Dominguez, 256 Cal. App. 2d at 627; Lent, 15 Cal. 3d 486; Bauer, 211 Cal. App. 3d at 942; In re Stevens, 119 Cal. App. 4th at 1254 [Probation law interpreted the same as parole Law].) As Set forth above, there is a Marked absence of any connection between the condition of Petitioners parole and their underlying offense. The requisite connection between the residency restriction and the prevention of future criminal acts is also absent. (Dominguez, 256 Cal. App. 2d at 628; Lent 15 Cal. 3d at 486.)

California courts have repeatedly struck down probation Conditions that were not related to the underlying crimes. In People v. Kiddoo (1990) 225 Cal. App. 3d 922, defendant was convicted of possession of Methamphetamine but not allowed possess or consume alcohol or to frequent places in which alcohol was sold as a condition of his probation.

1 of 39

Bd. at 928. Similarly, in People v. Burden, 205 Cal. App. 3d 1277 (1988) a condition of probation that prohibited defendant from being employed as a salesperson was not valid where the conditions had no relationship to his crime (drawing checks on insufficient funds). Id at 1279-1280.) Likewise, the Sex offender residency requirements cannot lawfully apply to parolees whose sex offense did not involve minors.

Even if there is a connection between the parole condition and the underlying crime, there is no reasonable ~~c~~ connection between the condition and the prevention of future criminality, it arguably causes future criminality.

where, as here, a condition contributes nothing to public safety, and in fact the condition exacerbates circumstances that may result in future crimes, california courts have found conditions invalid (See e.g., Beach, 147 Cal. App. 3d at 3620-623; Borden, 205 Cal. App. 3d at 1280-1281; people v. frithey (1992) 2 Cal. App. 4Th 829, 837, 838) Thus in People v. Beach, a probation condition that required a women to relocate to a different ~~was~~ communitie was unreasonably broad because Keeping a women to relocate to a different neighborhood would not necessarily prevent future criminal conduct. (Beach, 147 Cal. App. 3d at 620-623.) The court emphasized that the condition might have the opposite effect in that "Taking appellant away from her established home, the companionship of her neighbors, and the familiarity of her sorroundings would not contribute to inner feelings of

5 of 39

physical Security..... and may very well heighten her feelings
of insecurity. (Id. at 621; see also Burden, 205 Cal. App. 3d
at 1280-1281 [condition that defendant not work as a Sales-
person was invalid where it was not reasonably related to future
criminality since he "could have worked at any Job and perpe-
rated the same kind of fraud" that he was convicted of].)
The Probation condition at issue in People v. Fritchey (1992)
2 Cal. App. 4th 829, 837-838 - that defendant forfeit his
truck because it had contained burgalary tools and was
used in the defendants crime - also failed the test of reason-
ableness under Lent because the defendants lawful owner
ship of a truck was conduct which is not itself criminal
and not reasonably related to future criminality. (Id at
837-838.) In so holding, the Fritchey court stated that a "rea-
sonable condition of Probation is not only fit and appropriate to the end
in view but it must be a reasonable means to that end. Reasonable
means are moderate, not excessive, not extreme, not deman-
ding too much, well-balanced" (Id, at 837-838)

   Requiring Petitioner to leave his home (and forcing homelessness
or re-incarceration upon him) does not prevent future crimi-
nality. Rather, the residency restriction undermines public
Safety. The severity of the restriction is also entirely out-
of-proportion to any possible speculative benefits. As such, the
condition is unreasonable and must be stricken.

   IV The residency Restrictions of Proposition 83, Are
   Impermissibly vague and violates petitioners/Plaintiffs
   fundamental Right to due Process.

6 of 39

Section 3003.5, Subdivision (b) is unconstitionally vague because it does not define the terms in the statue that would tell Petitioner where he is permitted to live. When a Penal Code/statue does not provide an individual with sufficient notice of permissible conduct, it will be found void for vagueness. (See Kolender v. Lawson (1983) 461 U.S. 352, 357; see also Lanzetta v. State of New Jersey (1939) 306 U.S. 451, 453 ["No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statues. All are entitled to be informed as to what the state commands or forbids".] The statue must also be definite so as to provide explicit standards for those who apply it in a manner that does not encourage arbitrary and discriminatory enforcement. (See Kolender, 461 U.S. at 357.)

Under Section 3003.5 subdivision (b) "it is unlawful for any person for whom registration is required pursuant to Section 290 to reside (For the Plantiff) within 2,640 feet of any public or private park school, or park where children regularly gather." This is the extent of the housing restrictions contained in the statue. The statue contains no definition of what constitutes "reside" for the purposes of the statue, how the 2640 feet between a parolee's residence and an offending school/and or park is to be measured, or, most problematic, what constitutes "a park where children gather." Such vagueness and lack of definition violates a parolee's right to due process, as they have no

warning as to where they may legally reside. (see
Grayned v. city of Rockford (1972) 408 U.S. 104, 108 ["vague
laws may trap the innocent by not providing fair warning"].)
   The vagueness of the statue with respect to what
constitues a "park where children gather", is encouraging
arbitrary enforcement by Law enforcement personnel
throughout the state. (see Kolender, 461 U.S. at 358.)
Each individual CDCR parole unit has almost complete discr-
etion to determine whether or not a parolee is in compl-
iance with the housing restrictions, based on an independent
assessment of what constitues "a park where children
regularly gather". for example, parole agents might det-
ermine that beaches and commercial ball parks are "parks
where children gather," while in other counties parole
agents might declare all open space with dirt and
shrubs or a nature reserve with Bobcats and coyotes
parks off limits, regardless of wet whether children
are known to regularly gather at such locations. CDCR
unreasonably misinterpeted this "park where children
gather" it's not, its a grassy area next to the police
dept. where its employees sit to "break" or lunch,
plaintiff registars their.
   In addition, Respondent has chosen to define the
2,640 feet/foot distance term of the statue to
mean 2,640 feet "as the crow flys". Some individuals
are thus being forced from their homes even though
the school or park at issue is located on the other

8 of 39

side of a freeway, with no means of access along a path anyway near as short as 2,640 feet for the Plaintiff.

The impermissibly vague nature of the statute allows this sort of arbitrary and capricious enforcement with no consideration for the interest intended to be served. Parolees themselves are unable to come into compliance with the housing restrictions because of the vagueness of the statutory language coupled with the arbitrary enforcement of its restrictions. Parolees attempting to find housing on their own cannot rely on maps to locate compliant housing if there are no consistent or explicit instructions as to what constitutes a "Park where children gather". This is especially problematic given the short time that parolees have been given to find compliant housing or face arrest and incarceration. This housing restriction should be declared unconstitutionally vague, as it does not describe, with sufficient clarity, what a parolee must do in order to be in compliance with the statute. (See Kolender, 461 U.S. at 361.)

    ✓ The Proposition 83 Residency Restriction violates Section 3 of the California Penal Code which Prohibits Retroactivity of Penal Statues

The 2,640-foot restriction as applied to section 290 registraints who committed underlying sex offense prior to November 8, 2006 violates Penal Code Section 3, which states, "[n]o Part of [the Penal Code] is retroactive, unless expressly so declared." Absent an express declaration, a statue may apply retroactively only if "There is a clear and compelling

9 of 39

implication'" That The legislature or The voters intended
Such a result. (In re Chavez (2004) 114 Cal. App. 4th 989, 993.)
  A Law is considered to be retroactive if "it attaches new
legal consequences to, or increases a party's liability for
conduct that was completed before the laws effective date." (People v.
Grant (1999) 20 cal. 4th 150, 157.) A law is retroactive if "[the last]
event necessary to Trigger application of the statute occ-
ured before... The statue's effective date." (Ibid) In this
instance, section 3003.5, subdivision (b) states that the
housing restrictions apply to "any person for whom registration
is required pursuant to Section 290." The last event necessary
to trigger application of the housing restrictions is registrants
underlying Sex offense. Defendant, However, has chosen to
defy Section 3's rule of non-retroactivity, and to ~~enforce~~
enforce the 2,640-foot limit against The Plaintiff, whose
Section 290 offense occured prior to November 8, 2006.
This is an impermissible retroactive application of a
statue that is silent as to retroactivity. (See Tapia v.
Superior Court (1991) 53 cal. 3d 282, 298 ["application of [the
statute] to crimes committed before the measures effective
date would be 'retrospective' because [it] would change the
legal consequences of the defendants past conduct"].)
  VI The Proposition 83 Residency Restriction violates
The Ex Post facto Clause as applied to persons who committed
Sex offenses before the November 8, 2006 Effective DATE
  the 2640-foot restriction violates the Ex Post facto
Clause of the United States Constitution as applied to

to persons, like Plaintiff, whose sex offense were/was committed before three distinct types of ex post facto violations: (1) "any statute which punishes as a crime an act previously committed which was innocent when done;" (2) any statute "which makes more burdensome the punishment for a crime, after its commission;" and (3) any statue "which deprives one charge with crime of any defense available according to law at the time when the act was committed." (Collins v. Youngblood (1990) 497 U.S. 37, 42 [quoting Beazell v. Ohio (1925) 269 U.S. 167, 169-170].)

The 2,640-foot restriction, as applied to persons who committed sex offenses before November 8, 2006, falls into the second category of ex post facto violations, in that it "makes more burdensome the punishment for a crime, after its commission". A law violates this aspect of the Ex Post Facto clause if it operates retroactively by punishing conduct completed before its enactment and adds to the penalty already imposed. (See Weaver v. Graham (1981) 450 U.S. 24, 29-30; See also Johnson v. United States (2000) 529 U.S. 694, 699)

The SPPCA's 2640-foot restriction is sufficiently punitive to trigger the Ex Post Facto Clause. In assessing whether a statute is punitive, the court must determine whether the purpose of the statute was to establish a non-punitive, regulatory scheme or to impose punishment. (see Smith v. Doe (2002) 538 U.S. 84, 92.) If the statute was enacted to impose punishment, then it is a facial

1 of 39

violation of the Ex Post Facto Clause. (Ibid) If, however, the statute was intended to be regulatory, an individual must demonstrate that the scheme is "so punitive either in purpose or effect as to negate[the states] intention to deem it civil" to establish a constitutional violation. (Ibid) Here, both test are met, in that the SPPCA's intent and effect are punitive.

A. The Purpose of the 2,640-foot Restriction Is Punishment,

In determining whether a statute is punitive in nature, the court must access the legislature's intent by consideraing the statory language and structure. (See Smith v. Doe, 538 U.S. at 92.) Under California law, the intent of the voters in a voter-passed initiative is paramount, and can be determined from the ordinary language of the statute. (See Davis v. City of Berkeley (1990) 51 Cal. 3d 227, 234.)

The SPPCA's short Title is the "The Sexual Predator Punishment and Control Act: Jessica's law." (Prop. 83, Section I [emphasis added], available at www.sos.ca.gov/elections/vig 06/general 06/PDF/proposition 83/entire prop.83.pdf.) The initial findings and declarations state that California places a "high priority on maintaining public safety through laws deter that deter and punish criminal behavior." (Id. at section 2(a) In order to meet such public safety goals, the statute provides that "adequate penalties must be enacted to ensure predators cannot escape prosecution"(Id at Section 2(i,

B. The Effect of The 2,640-foot Restriction is Punitive.
The Supreme Court in Kennedy v. Mendoza-Maertnez (1963)
372 U.S. 144 articulated non-dispositive factors to be consi-
dered when determining whether the law's effects are
punitive. The factors included, but are not limited to:
whether the law has Traditionally been regarded as a
punishment, whether the law has a rational connection
to a non-punitive purpose, and whether the law is
excessive in relation to that other assigned purpose.
(Ibid)

In Many counties, there is nowhere for section 290 registr-
aints to live that meet the 2,640-foot limit. These restrictions/
~~restraints to live that meet the~~ can also be limitlessly
expanded under the statute, as section 3003.5,
subdivision (c) allows for municipal Jurisdictions to
enact ordinances imposing further residency restric-
tions on section 290 registrants.

The 2,640 foot restriction is excessive in relation to
it's stated purpose, and has no rational connection to
that purpose. (see Kennedy v. Medoza, 372 U.S. 168-169)
The stated purpose of 2,640-foot restriction is to increase
child safety. (See Prop. 83, section 29(c) The imposition of the 2,640-
foot restriction against all section 290 registraints, including those
whose offense did not involve children, is excessive and has no
rational connection to the purpose of increasing child safety.
Indeed, such restrictions degrade public safety as section
290 registraints who cannot find housing are iether driven

3 of 39

underground, are forced to become transients (increasing the
difficulty of adequate supervision by parole and law enfo-
rcement), and/or separated from friends, family, employ-
ment and other support networks.

   C. Enforcement Through A Parole Condition Does not Cure
The Ex Post Facto Violation.

   New laws that make the punishment for a prior crime
more burdensome violate the Ex Post Facto Clause regardless
of whether the punishment is enforced in connection with
parole conditions. (See United States v. Jackson (9th Cir. 1999)
189 F.3d 820 [Parole condition arising from change in law
after commission of underlying offense violates Ex Post
Facto Clause if the condition is punitive].)

   In People v. Callejas (2000) 85 Cal. App 4th 667, The court
determined that the Ex Post Facto clause barred the impo-
sition of a parole ~~condition~~ revocation fine where the under-
lying was committed prior to the enactment of the
statue. In Callejas, the Plaintiff committed a drunk
driving offense in 1993, and was sentenced to probation.
(Id at 669) In 1995, The legislater added a "parole revocation
fine" to the Penal Code. (Ibid.) In 1999, Callejas was re-sent-
enced for the 1993 drunk driving offense and the superior
court imposed the new parole revocation fine as a part
of the sentence. (Ibid) The court of Appeals held that
new parole revocation fine increased penalties in a manner
that differed from the conditions in place at the time
of Callejas underlying offense, not future violations of

4 of 39

parole (Id. at 677-678.)

Callejas followed the rule of Johnson v. United States (2000) U.S. 695, in holding that for ex post facto purposes, a parole violation. Johnson concerned the imposition of an additional supervised release term after violation of parole. (see id. 700-701.) Holding that post-revocation penalties must be attributed to the original conviction, the Court determined that the imposition of an additional supervised ~~and be~~ released term would alter the conditions upon which the Petitioner was originally sentenced and be a retrospective application of the statue barred by the Ex Post Facto Clause. (Id at 701)

Both Johnson and Callejas establish that the application of the SPPCA to parolees who committed section 290 offenses prior to the statues passage Nov.07,06 would be retrospective, regardless of whether such parolees were released from custody after the statues effective date, as the new housing restrictions fundamentally Alter the parole scheme under which they were sentenced. Because the SPPCA's 2,640-foot restrictive is punitive in intent and effect, such retrospective application violates the Ex Post Facto Clause.

VII The imposition of the residency Requirements on Persons Released from non-sex offense Terms is not authorized by Proposition 83.

Defendant is acting beyond its statutory authoritie by imposing the 2640-foot restrictions on

50F39

on persons not covered by the statute. As part of a statute defining parole conditions, section 3003.5, Subdivision (b) must be read in conjunction with the entire statute, including the proceeding subdivision (a). (See People v. Johnson (1995) 33 Cal. App. 4th 623, 621 ["statutes which are in pari materia should be read together and harmonized if possible"].) Section 3003.5, Subdivision (a) provides that "when a person is released on parole after having served a term of imprisonment in state prison for any offense for which registration is required pursuant section 290, that person may not, during the period of parole, reside in any single family dwelling with any other person also required to register pursuant to Section 290, unless those persons are legally related by blood, Marriage, or adoption." (emphasis added) Subdivision (b) adds a condition regarding proximity to schools and parks where children gather. The subdivision (b) condition must be read in conjunction with the subdivision (A) condition to apply only when a person is released on parole immediately after having served a term of imprisonment for Section 290 offense. The residency restrictions of Section 3003.5, Subdivision (b) may only be applied to only those parolees released after Nov. 8, 06, after having served a term "for any offense for which registration is required pursuant to section 290."

The omission of any criminal penalty to enforce of the residency restrictions in section 3003.5, further supports the conclusion that subdivision (a) and (b) are meant to be read together.

:16nF.39

No criminal penalty of any kind is provided for a violation of the housing restrictions in Section 3003.5, Subdivisions (a) and (b). Nor do subdivisions (a) or (b) specify that failure to follow the housing restrictions would be a "public offense", which would be necessary to bring the restrictions within the catch-all provision of Penal Code section 19.4.

### Conclusion

For the foregoing reasons, The Court should issue an immediate stay prohibiting Defendant from enforcing CDCR Policy No. 07-36 and should Temporarily and permenently enjoin Defendant from enforcing section 3003.5, subdivision (b) as a parole condition against Plaintiff

Dated: 7/08/08             Respectfully Submitted

_Santiago Casso_
(signiture)
Santiago Casso
(print name)

7.F.39

Santiago G. Casso Jr.

K-79110

Devel Vocational Institute

P.O. Box 600

Tracy, Ca. 95378-0600

Pro-Per


In The United States District Court
for The Northern District of California


Santiago G. Casso Jr.
                    Plaintiff
          vs.

California Dept of Corrections
Secretary: James tilton
                    Defendant

CASE NUMBER

Request for Appointment
of Counsel and
Declaration of Indigency


I, Santiago Casso, declare that I am The Plaintiff in
The above-entitled action, and that I am indigent
and unable to afford counsel. My Total assets
are $ zero dollars and zero cents and my income
is $ zero per month

I hereby request that counsel be appointed in this
matter so that my interest may be protected by the
proffessional assistance required. Pursuant to the
California Rules of Court 4.551(c)(2), when a court issues
an Order to show cause, Counsel Must be appointed for an
indigent Plaintiff who request Counsel. I declare under
Penalty of perjury that the foregoing is true and Correct and
8 of 39 that this declaration was executed on this date 7/01/08

Date: _____ 1/01/08 _____          Santiago C Cassa Jr

                                       Santiago C Cassa Jr

9 of 39

JS 44 - CAND (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

**I.(a) PLAINTIFFS** Santiago G. Casso Jr.

**DEFENDANTS** California dept. of Corrections
Secretary: James Tilton

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Alameda
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Pro-Per  37461 Cherry St., APT-B
Newark, Ca. 94560

ATTORNEYS (IF KNOWN) Jose A. Zeliden-Zepeda, Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, Ca. 94102-7004

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☑ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF
(For diversity cases only)                           AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☑ Original Proceeding
- ☐ Removed from State Court
- ☐ Remanded from Appellate Court
- ☐ Reinstated or Reopened
- ☐ Transferred from Another district (specify)
- ☐ Multidistrict Litigation
- ☐ Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN 'X' IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐610 Agriculture | ☐422 Appeal 28 USC 158 | ☐400 State Reapportionment |
| ☐120 Marine | ☐310 Airplane | ☐362 Personal Injury Med Malpractice | ☐620 Other Food & Drug | ☐423 Withdrawal 28 USC 157 | ☐410 Antitrust |
| ☐130 Miller Act | ☐315 Airplane Product Liability | ☐365 Personal Injury Product Liability | ☐625 Drug Related Seizure of Property 21 USC 881 | | ☐430 Banks and Banking |
| ☐140 Negotiable Instrument | ☐320 Assault Libel & Slander | ☐368 Asbestos Personal Injury Product Liability | ☐630 Liquor Laws | **PROPERTY RIGHTS** | ☐450 Commerce/ICC Rates/etc. |
| ☐150 Recovery of Overpayment & Enforcement of Judgment | ☐330 Federal Employers Liability | | ☐640 RR & Truck | ☐820 Copyrights | ☐460 Deportation |
| ☐151 Medicare Act | ☐340 Marine | **PERSONAL PROPERTY** | ☐650 Airline Regs | ☐830 Patent | ☐470 Racketeer Influenced and Corrupt Organizations |
| ☐152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐345 Marine Product Liability | ☐370 Other Fraud | ☐660 Occupational Safety/Health | ☐840 Trademark | ☐810 Selective Service |
| ☐153 Recovery of Overpayment of Veteran's Benefits | ☐350 Motor Vehicle | ☐371 Truth in Lending | ☐690 Other | **SOCIAL SECURITY** | ☐850 Securities/Commodities/Exchange |
| ☐160 Stockholders Suits - | ☐355 Motor Vehicle Product Liability | ☐380 Other Personal Property Damage | **LABOR** | ☐861 HIA (1395ff) | ☐875 Customer Challenge 12 USC 3410 |
| ☐190 Other Contract | ☐360 Other Personal Injury | ☐385 Property Damage Product Liability | ☐710 Fair Labor Standards Act | ☐862 Black Lung (923) | ☐891 Agricultural Acts |
| ☐195 Contract Product Liability | | | ☐720 Labor/Mgmt Relations | ☐863 DIWC/DIWW (405(g)) | ☐892 Economic Stabilization Act |
| ☐196 Franchise | | | ☐730 Labor/Mgmt Reporting & Disclosure Act | ☐864 SSID Title XVI | ☐893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐740 Railway Labor Act | ☐865 RSI (405(g)) | ☐894 Energy Allocation Act |
| ☐210 Land Condemnation | ☐441 Voting | ☐510 Motion to Vacate Sentence Habeas Corpus: | ☐790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐895 Freedom of Information Act |
| ☐220 Foreclosure | ☐442 Employment | ☐530 General | ☐791 Empl.Ret. Inc. Security Act | ☐870 Taxes (US Plaintiff or Defendant | ☐900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐230 Rent Lease & Ejectment | ☐443 Housing | ☐535 Death Penalty | | ☐871 IRS - Third Party 26 USC 7609 | ☑950 Constitutionality of State Statutes |
| ☐240 Torts to Land | ☐444 Welfare | ☐540 Mandamus & Other | | | ☐890 Other Statutory Actions |
| ☐245 Tort Product Liability | ☐440 Other Civil Rights | ☐550 Civil Rights | | | |
| ☐290 All Other Real Property | ☐445 Amer w/ disab - Empl | ☐555 Prison Condition | | | |
| | ☐446 Amer w/ disab - Other | | | | |
| | ☐480 Consumer Credit | | | | |
| | ☐490 Cable/Satellite TV | | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) "Ex post facto" Unconstitutional application of "83" proposition.

## VII. REQUESTED IN COMPLAINT: ☐ CHECK IF THIS IS A CLASS ACTION
A stay/injunction of CDC Policy #07-36   UNDER F.R.C.P. 23
DEMAND $200,000.00  CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)   ☑ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE 7/01/08

SIGNATURE OF ATTORNEY OF RECORD
Santiago G. Casso Jr. Pro-Per

Exibit-A

FoR Question on page I(D)(4) of Complaint-1983.

Treat as Original

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location:  Institution/Parole Region  ___DVI___   Log No. __07-1503__   Category ____
1. _____
2. __BAB/RII/SLD__   2. __07-00055__

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Santiago Casso | K-79110 | unassigned | Jewing  115 Low |

**A. Describe Problem:** I am being unjustly Classified as a high risk Sex offender so That a Global Positioning System can be attached to me. 19 plus years ago for my conduct in a local bar during buiseness hours, I was arrested and aquired a "R" Suffix or became a 290 registrant in early of 1988. I am not a repeat offender and in 1993 I was placed at CDC's lowest security level reporting in by mail monthly. In almost 20 yrs I have never exibited any conduct or behavior That any reasonable person could believe would lead to similar criminal behavior. I have never been diagnosed with a mental disorder and nev-

If you need more space, attach one additional sheet.  been a participant in any mental health program.

**B. Action Requested:** I wish For This Global Positioning angle bracelet not to be attached to me, For a re-evaluation That has me designated as a "Sexuall Violent Preditor".

Inmate/Parolee Signature: _Santiago Casso_   Date Submitted: 6-/01/07

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

Staff Signature: _____   Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____   Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

Treat as Original  JUN 2-7 2007 RECD
REGIONAL II APPEALS

RECEIVED
JUN 15 2007
DVI APPEALS OFFICE

CDC Appeal Number: _____

| First Level | ☐ Granted | ☐ P. Granted | ☐ Denied | ☒ Other _Withdrawn._ |
|---|---|---|---|---|

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _6/15/07_    Due Date: _7/30/07_

Interviewed by: _ON 8/20/07 AT 1010 hrs G. VIELA ROSA PA II, UNIT SUPERVISOR 3CO_
_ATTEMPTED TO INTERVIEW APPELLANT VIA TELEPHONE WHILE APPELLANT WAS IN THE_
_CCI OFFICE (X8531) AT ANGEAL STATE PRISON. INMATE CASSO STATED "I NO_
_LONGER CARE ABOUT THE 602, I AM WAITING ON A HABEAS MOTION". WITH_
_THAT, INMATE CASSO WITHDREW APPEAL #07-00055_

Staff Signature: _G. VIELA ROSA_    Title: _PAROLE AGENT II_    Date Completed: _8/22/07_

Division Head Approved:    Returned

Signature: ___    Title: ___    Date to Inmate: ___

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Signature: ___    Date Submitted: ___

| Second Level | ☐ Granted | ☐ P. Granted | ☐ Denied | ☒ Other _Withdrawn_ |
|---|---|---|---|---|

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: ___    Due Date: ___

☒ See Attached Letter    _ABOVE NARRATIVE_

Signature: ___    Date Completed: _9/4/07_

Warden/Superintendent Signature: ___    Date Returned to Inmate: ___

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. _received 1/15/08_

_dissatisfied, I never withdrew this Appeal #07-00055, I merly meant that_
_I did not expect any resolution with this 602 that I was waiting on better_
_results with a habeas Corpus. I still need to exhaust Administrative remedies._
_I ask this 602 not to be withdrawn I never siad that or implied it I also_
_ask the GPS braclet be removed and I be allowed to stay at my residence until_
_this issue is resolved, My residence is also being compromised due to "Jessicas Law"_

Signature: _Santiago G. Casso Jr._    Date Submitted: _1/20/08_

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other ___
☐ See Attached Letter

Date: ___

COC 602 (12/87)

Treat as Original

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                                            Gray Davis, Governor

**DEPARTMENT OF CORRECTIONS**
**Parole and Community Services Division**
P.O. Box 942883
Sacramento, CA 94283-0001



# Addendum
# Special Conditions of Parole

| CDC Number | Casso, Santiago |
|---|---|
| **K79110** | |

**You must comply with all of the following conditions while you are on parole. You must have prior written approval from your assigned parole agent for any exceptions.**

REASON    INITIAL

### DRUG/ALCOHOL ABUSE:

| | | | |
|---|---|---|---|
| 1 | You will participate in anti-narcotic testing in accordance with instructions from the Parole and Community Services Division (P&CSD). | 2 | |
| 2 | You will actively participate in substance abuse treatment as directed by P&CSD. | 2 | |
| 3 | You must not consume, possess or have access to any alcoholic beverages or liquors. | 2 | |
| 4 | You will not be inside, or in close proximity to, businesses whose primary function is to sell or serve alcoholic beverages. | 2 | |

### TREATMENT:

| | | | |
|---|---|---|---|
| 5 | You will actively participate in the Parole Outpatient Clinic (POC) and remain in that treatment program as directed by your parole agent. | 5 | |
| 6 | You will actively participate in the psychiatric treatment program as approved by your assigned parole agent. | 5 | |
| 7 | You will actively participate in any programs specific to the High Risk Sexual Offender/High Control/Sexual Habitual Offender/Sexually Violent Predator Program as directed by P&CSD. | 5 | |

### ASSOCIATION:

| | | | |
|---|---|---|---|
| 8 | You are not to associate with any alcohol or drug users. | 2 | |
| 9 | You are not to associate with any sex offenders except in a treatment program as approved by P&CSD. | 5 | |
| 10 | You will inform your parole agent about any person with which you have a significant relationship. You will inform all persons with whom you have a significant relationship about your criminal history and will consent to your parole agent advising of same if deemed appropriate by your parole agent. | 5 | |

### RESIDENCE, TRAVEL AND MOVEMENT:

| | | | |
|---|---|---|---|
| 11 | You will not travel outside of your county of residence without prior P&CSD approval. | 5 | |
| 12 | You will remain inside your residence of record between the hours of **10 p.m.** and **6 a.m.** | 5 | |
| 13 | You may not contact your crime victim(s), their families or friends. This includes contact in person, by telephone, mail, computer or through another person. | 5 | |

* CDC 1017 (3/89)

# Special Conditions of Parole

| CDC Number | |
|---|---|
| **K79110** | **Casso, Santiago** |

Page 2

## POSSESSIONS/ACTIVITIES:

| 14 | You are not to view television shows or movies that are geared toward your criminal history or your modus operandi. | 5 | |
|---|---|---|---|
| 15 | You are not to view television programs, movies or videos designed to stimulate or arouse sexual fantasies. | 5 | |
| 16 | You are not to view, possess or have access to video tapes, films, magazines or photographs depicting any type of sexual activity or sexually oriented material. | 5 | |
| 17 | You are not to enter, travel past or loiter near areas of sexual or pornographic activity such as adult bookstores, massage parlors, topless bars, sex shops, etc. | 5 | |
| 18 | You are not to possess or have access to handcuffs, restraint equipment or other items that could be used for sadomasochistic purposes. | 5 | |
| 19 | You may not possess or view any material that can be considered obscene. | 5 | |
| 20 | Any computer equipment, or electronic device, with which you have access, the contents of which any and all data storage units (hard drives, disc drives, floppies, etc.) are subject to search and seizure by your parole agent and any law enforcement official. | 5 | |

## OTHER:

| 21 | You must register Penal Code Section 290. | 5 | |
|---|---|---|---|
| 22 | You must have your Penal Code 290 registration verification with you at all times. You must present it during any contact or interaction with any law enforcement officer. | 5 | |

## GLOBAL POSITIONING SYSTEM (GPS)

| 23 | You shall participate in GPS as directed by your parole agent. | 5 | |
|---|---|---|---|
| 24 | You are ordered to comply with all zone restrictions, curfew restrictions, equipment charging requirements and equipment care issues as instructed by your parole agent. These instructions will be provided to you in writing. | 5 | |
| 25 | You shall charge the GPS equipment for one hour two times a day ( every 12 hours). | 5 | |
| 26 | You shall not tamper with the device. | 5 | |
| 27 | You may be charged criminally with grand or petty theft in the event the equipment is not returned, is lost, is stolen and or is damaged. | 5 | |

### REASONS FOR SPECIAL CONDITIONS OF PAROLE:

1 = History of drug use.
2 = History of alcohol use/abuse.
3 = Related to commitment offense(s).
4 = Nature of commitment offense(s).
5 = Related to previous offense(s).

## Special Conditions of Parole

| CDC Number | Casso, Santiago |
|------------|-----------------|
| K79110     |                 |

Page 3

```
6 = Related to prior parole violation(s).
7 = History of psychiatric problems.
8 = History of predatory sexual behavior.
9 = Offender typology.
10 = POC referral as required per PC 3002 (Minor is Victim).
11 = Other good cause determined by Parole Agent.
12 = Diagnosed with a mental disorder (Inpatient/Outpatient/Enhanced
      Outpatient/CCCMS).
13 = Victim Protection : A)Commitment Offense
                         B)Parole Violation
                         C)Previous Offense
14 = 290 Registrant
15 = Designated Gang Member
16 = Restraining Order
```

Parole Unit Supervisor Signature _____     Date 4/6/07

Parole Agent Signature _____     Date 4/6/07

Parolee Signature _____     Date + 9/6/07

# Exibits - 1 Thru 5

1- release date / discharge date
2- Finances
3- Medical Statues
4- Medical Release/Statues
5- Parolee Appeals tracking system.



```
PV5OP55              PAROLE VIOLATOR WORKTIME CREDIT SYSTEM           05/16/2008
                     PAROLE VIOLATOR LEGAL STATUS SUMMARY            PAGE:    1
CDC NO: K79110   NAME: CASSO,SANTIAGO,G              PAR STS: PRTC    LOC: DVIRC
-------------------------------------------------------------------------------
ORIGINAL PAROLE DATE: 10/02/2004  PAL TIME      : 140   TOT PRV REV TIME: 772
PAROLE PERIOD      : 3            PREV DEAD TIME:        PREV HOLD CR     :
KEMPER/SOSA CREDITS :             DCH REVIEW DATE:       N/A
-------------------------------------------------------------------------------
ARREST/HOLD DATE   : 02/28/2008   HOLD CREDITS:               DEAD TIME:

                                  MRRD: 11/24/2008   CDD : 02/18/2009
-------------------------------------------------------------------------------
REVOCATION TIME  270   WORK ELIG  Y   BEGIN DATE 02/28/2008   END DATE 07/18/2008


TRAN         DATE          END DATE          LOG        RULE      VIOLATION   DAYS
TYPE                                         NUMBER     NUMBER    CATEGORY

ICG      02/28/2008     07/18/2008                                           13.5

CTO BALANCE =     0   AS OF    / /

F)RRD 07/18/2008 BASED ON CREDIT APPLIED THRU 03/24/2008 , WORK GRP A1
```

*Exibit-P2*

Check Center NEWARK
5710 THORNTON AVE
NEWARK, CA  94560
(510) 794-1099

SANTIAGO CASSO JR          TELLER  NMC

Receipt # 28658166          Aug 29 2007 2:20:52 PM

| Item | Qty | Amount | Fee | Total |
|------|-----|--------|-----|-------|
| UST1 | 1 | $856.00 | 21.32 | 834.68 |
| Total for Checks | | $856.00 | 21.32 | 834.68 |

| | |
|---|---|
| Tax | $0.00 |
| Less Checks | $0.00 |
| Amount Due | $834.68 |
| Cash Tendered | $0.00 |
| Cash Paid to Customer | ($834.68) |

EASY MONEY
Winning $1,000 in cash has never been so
easy. When cashing a check in August or
September you could win great CASH PRIZES
our Easy Money Sweepstakes.  >>> ASK
US FOR DETAILS <<<

WE DO NOT DISCLOSE ANY NON PUBLIC
INFORMATION TO ANYONE, EXCEPT
AS PERMITTED BY LAW.  Thank You

STORE HOURS: Mon - Fri. 8am - 9pm
Saturday 8am - 8pm
unday 10am - 4pm

I *Santiago G. Casso Jr*, ssn# 546-98-157(, D.O.B. 12/11/54
declare under penalty of perjury under the laws of the
State of California that the above reciete is a zerox copy
of the Petitioners munthly income on ssI disability benifits.
Date:

*Santiago G. Casso Jr*

Santiago G. Casso Jr.

SOCIAL SECURITY ADMINISTRATION
SUPPLEMENTAL SECURITY INCOME
Important Information

                                    Office Address:
                                    SOCIAL SECURITY
                                    SUITE 100
                                    3100 MOWRY AVE
                                    FREMONT CA 94538

     SANTIAGO G CASSO JR
     ~~42836 GATEWOOD ST~~
     ~~FREMONT, CA 94538~~
     37461 Cherry St., APT-B
     Newark, Ca. 94560

                                    Office Hours: 09:00 AM - 04:30 PM

                                    Date: August 31, 2007

                                    Social Security Number:

                                        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

                                    Telephone: 510-797-7216

                                    Extension: 203

On August 31, 2007, we talked with you and completed SANTIAGO G CASSO JR'S
redetermination for Supplemental Security Income (SSI). We have stored his
redetermination electronically in our records. Attached is a summary of your
statements for your review.

What You Need To Do

   o  Review the redetermination summary to ensure we recorded your statements
      correctly.

   o  If you agree with all your statements, you may retain the redetermination
      summary for his records.

   o  If you disagree with any of your statements, you should contact us within
      10 days after the date of this notice to let us know.

   o  Mail or bring the information requested below along with this notice. If
      you mail the information, please use the enclosed postage paid envelope.

IMPORTANT REMINDER

Penalty of Perjury

You declared under penalty of perjury that all the information on this summary
is true and correct to the best of your knowledge. Anyone who knowingly gives a
false or misleading statement about a material fact in a redetermination, or
causes someone else to do so, commits a crime and may be sent to prison or may
face other penalties, or both.

- You should receive the check no later than September 15, 2007.  Your regular monthly check of $856.00 will then be issued about the first day of the month.

- Since the advance payment against your Supplemental Security Income has been fully accounted for, we are sending you a check for $856.00 for the month of October 2007. This check should be received about the first of the month. After that, your check will be for your regular monthly payment amount.

**Your Payment Is Based On These Facts**

- **Based on the facts we have, you entered a facility in September 2006. Our records show that you were in this facility for each full month October 2006 through December 2006.** Usually, SSI payments are stopped for each month that:

  – You are a patient for a full month in an institution run by the Federal, State, or local government. This includes some hospitals, nursing homes, other care facilities or prisons; and

  – If you have Medicaid, it does not pay for more than half the cost of your care.

  You could be eligible for continued payments for any of the first 3 full months that you are a patient if:

  – We would have stopped your SSI payment for any of these months; and

  – You are eligible for an SSI payment in the month before we would have stopped your SSI payment; and

  – You are in a medical facility; and

  – You give us proof that you have home expenses that you have to continue to pay; and

  – We have proof that your doctor expects you to stay in a medical facility for less than 91 days.

  The proofs must be received or postmarked by the 90th day of your stay in the facility or by the day of your release, if earlier.

  You do not meet all these requirements because you were not in a medical facility.

- **The amount of SSI we pay depends on your living arrangements.**  Your living arrangements are where you live, with whom you live, and how your food and shelter expenses are paid.  Based on the information we have, your Federal living arrangement is:

SSA-L8100

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

09/11/2007

Page  5 of  6



## HOW WE FIGURED YOUR PAYMENT FOR September 2007

### Your Payment Amount

| | |
|---|---|
| The most Federal SSI money the law allows us to pay | $623.00 |
| We didn't subtract (-) any income from Federal SSI money | - 0.00 |
| Federal SSI money | $623.00 |
| Plus (+) the most State SSI money the law allows us to pay | +233.00 |
| We didn't subtract (-) any income from State SSI money | - 0.00 |

**Total SSI Payment for September 2007**          $856.00

SSA-L8151

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                                          Page  6 of  6
09/11/2007

# HOW  WE  FIGURED  YOUR  PAYMENT  FOR  October 2007 ON

## Your Payment Amount

| | |
|---|---|
| The most Federal SSI money the law allows us to pay | $623.00 |
| We didn't subtract (-) any income from Federal SSI money | − 0.00 |
| Federal SSI money | $623.00 |
| Plus (+) the most State SSI money the law allows us to pay | +233.00 |
| We didn't subtract (-) any income from State SSI money | − 0.00 |

**Total Monthly SSI Payment**
  **for October 2007 on**                            $856.00

Exibit #2

REPORT ID: TS3030 .701                          REPORT DATE: 04/08/08
                                                PAGE NO:      1

                    CALIFORNIA DEPARTMENT OF CORRECTIONS
                         DEUEL VOCATIONAL INSTITUTION
                         INMATE TRUST ACCOUNTING SYSTEM
                         INMATE TRUST ACCOUNT STATEMENT

                 FOR THE PERIOD: OCT. 01, 2007 THRU APR. 08, 2008

COUNT NUMBER : K79110              BED/CELL NUMBER: WHD 00000000012
COUNT NAME  : CASSO, SANTIAGO G JR    ACCOUNT TYPE: I
IVILEGE GROUP: U
                         TRUST ACCOUNT ACTIVITY

THE WITHIN INSTRUMENT IS A CORRECT
COPY OF THE TRUST ACCOUNT MAINTAINED
BY THIS OFFICE.
ATTEST: 4/8/08
CALIFORNIA DEPARTMENT OF CORRECTIONS
BY _____
    TRUST OFFICE

          TRAN
TE  CODE  DESCRIPTION   COMMENT   CHECK NUM  DEPOSITS  WITHDRAWALS  BALANCE
--- ----  -----------   -------   ---------  --------  -----------  -------

/01/2007   BEGINNING BALANCE                                         0.00

/10*DD30 CASH DEPOSIT  RR/703534             10.37                  10.37
/11 W501 SHIPPING CHAR GSO/703586                        6.40        3.97
/11*W502 POSTAGE CHARG LGLPOS3587                        0.41        3.56
/17 W502 POSTAGE CHARG LGLPOS3686                        0.41        3.15
/17 W502 POSTAGE CHARG LGLPOS3686                        0.41        2.74
/24 W502 POSTAGE CHARG POST703861                        0.41        2.33
/24 W502 POSTAGE CHARG POST703861                        0.41        1.92
/24 W502 POSTAGE CHARG POST703861                        0.41        1.51
/24 W502 POSTAGE CHARG ENVLOP3861                        1.00        0.51
/31 W502 POSTAGE CHARG ENVLPO3972                        0.51        0.00
ACTIVITY FOR 2008
/22*DD30 CASH DEPOSIT  MR/704408              9.00                   9.00
/23 W502 POSTAGE CHARG POST704473                        0.75        8.25
/23 W502 POSTAGE CHARG POST704473                        0.75        7.50
/23 W502 POSTAGE CHARG POST704473                        2.84        4.66
/23 W502 POSTAGE CHARG ENVLOP4473                        0.75        3.91
/23 W502 POSTAGE CHARG POST704473                        0.58        3.33
/23 W502 POSTAGE CHARG POST704473                        0.41        2.92
/23 W502 POSTAGE CHARG POST704473                        2.16        0.76
/23 W502 POSTAGE CHARG POST704473                        0.41        0.35
/23 W502 POSTAGE CHARG POST704473                        0.35        0.00


                * RESTITUTION ACCOUNT ACTIVITY

E SENTENCED: 10/08/03                  CASE NUMBER: H34711
NTY CODE: ALA                          FINE AMOUNT: $    800.00

ATE    TRANS.   DESCRIPTION                TRANS. AMT.   BALANCE
-----  ------   -----------------------    -----------   -------

01/2007   BEGINNING BALANCE                              794.00

```
:PORT ID: TS3030 .701                    REPORT DATE: 04/08/08
                                            PAGE NO:    2

                 DEUEL VOCATIONAL INSTITUTION
                 INMATE TRUST ACCOUNT STATEMENT

          FOR THE PERIOD: OCT. 01, 2007 THRU APR. 08, 2008

:CT: K79110    ACCT NAME: CASSO, SANTIAGO G JR    ACCT TYPE: I
```

THE WITHIN INSTRUMENT IS A CORRECT
COPY OF THE TRUST ACCOUNT MAINTAINED
BY THIS OFFICE.
ATTEST: 4/8/08
CALIFORNIA DEPARTMENT OF CORRECTIONS
BY _____
TRUST OFFICE

```
               * RESTITUTION ACCOUNT ACTIVITY

TE SENTENCED: 10/08/03              CASE NUMBER: H34711
UNTY CODE: ALA                      FINE AMOUNT: $    800.00

DATE    TRANS.   DESCRIPTION              TRANS. AMT.   BALANCE
------  ------   ------------------------ -----------   ---------
/06/07  SU01     SYS TRNSF - POS            12.50-       781.50
/10/07  DR30     REST DED-CASH DEPOSIT      11.51-       769.99
/22/08  DR30     REST DED-CASH DEPOSIT      10.00-       759.99
/04/08  SU01     SYS TRNSF - POS             3.64-       756.35

  * THIS STATEMENT DOES NOT REFLECT THE ADMINISTRATIVE FEE CHARGE THAT *
  * IS EQUAL TO TEN PERCENT OF THE RESTITUTION AMOUNT COLLECTED.       *
```

```
                    TRUST ACCOUNT SUMMARY

BEGINNING    TOTAL       TOTAL      CURRENT     HOLDS     TRANSACTIONS
 BALANCE    DEPOSITS   WITHDRAWALS  BALANCE    BALANCE    TO BE POSTED
---------- ----------- ----------- ----------- ---------- ------------
   0.00       19.37       19.37        0.00       0.00         0.00
---------- ----------- ----------- ----------- ---------- ------------
---------- ----------- ----------- ----------- ---------- ------------

                                   CURRENT
                                  AVAILABLE
                                   BALANCE
                                 -------------
                                     0.00
                                 -------------
                                 -------------
```

STATE OF CALIFORNIA
DISABILITY PLACEMENT PROGRAM VERIFICATION (DPPV)
DC 1845 (Rev. 01/01)

DEPARTMENT OF CORRECTIONS
CHECK ALL APPLICABLE BOXES

**THIS FORM ONLY VERIFIES OR DISCONFIRMS CLAIMED PHYSICAL DISABILITIES LISTED IN SECTION B**

| INMATE NAME: Santiago Casso | CDC NUMBER: K 79110 | INSTITUTION: DVI | HOUSING ASSIGNMENT: | DATE FORM INITIATED: 5-7-08 |

*Sections A - B to be completed by licensed medical staff.*

| SECTION A: REASON FOR INITIATION OF FORM | SECTION B: DISABILITY BEING EVALUATED |
|---|---|
| [X] Inmate self-identifies to staff    [ ] Third party evaluation request | [X] Blind/Vision Impaired    [ ] Speech Impaired |
| [X] Observation by staff    [ ] Medical documentation or Central File information | [X] Deaf/Hearing Impaired    [X] Mobility Impaired |

*Sections C - G to be completed by a physician only.*

| SECTION C: PERMANENT DISABILITIES IMPACTING PLACEMENT | SECTION D: PERMANENT DISABILITIES *NOT* IMPACTING PLACEMENT |
|---|---|
| 1. [ ] FULL-TIME WHEELCHAIR USER - DPW Requires wheelchair accessible housing and path of travel. | 1. NO CORRESPONDING CATEGORY |
| 2. [ ] INTERMITTENT WHEELCHAIR USER - DPO Requires lower bunk, wheelchair accessible path of travel and *does not require* wheelchair accessible cell. | 2. NO CORRESPONDING CATEGORY |
| 3. [X] MOBILITY IMPAIRMENT - With or Without Assistive Device (Wheelchairs shall not be prescribed) - DPM Orthopedic, neurological or medical condition that substantially limits ambulation (cannot walk 100 yards on a level surface without pause) Requires lower bunk, no triple bunk, and no stairs in path of travel. | 3. [ ] MOBILITY IMPAIRMENT (Lower Extremities) - DNM Walks 100 yards without pause with or without assistive devices. [ ] No Housing Restrictions    [ ] See HOUSING RESTRICTIONS in Section E [ ] Requires relatively level terrain and no obstructions in path of travel. **Do not place at:** CCI, CMC-E, CRC, CTF-C, FSP, SAC, SCC I or II, SOL, or SQ. (CDC 128-C: _____ ) |
| 4. [ ] DEAF/HEARING IMPAIRMENT - DPH Must rely on written communication, lip reading or signing as residual hearing, with assistive devices, will not enable them to hear, understand or localize emergency warnings or public address announcements. | 4. [ ] HEARING IMPAIRMENT - DNH With residual hearing at a functional level with hearing aid(s). |
| 5. [ ] BLIND/VISION IMPAIRMENT - DPV Not correctable to central vision acuity of better than 20/200 with corrective lenses in at least one eye (See HOUSING RESTRICTIONS IN SECTION E) | 5. NO CORRESPONDING CATEGORY |
| 6. [ ] SPEECH IMPAIRMENT - DPS Does not communicate effectively speaking or in writing. | 6. [ ] SPEECH IMPAIRMENT - DNS Does not communicate effectively speaking, but does when writing. |

**SECTION E: ADDITIONAL MEDICAL INFORMATION**

| SAFETY ALERT: | HEALTH CARE APPLIANCE / IDENTIFICATION VEST: |
|---|---|
| [X] Requires relatively level terrain and no obstructions in path of travel | [X] Cane    [ ] Crutch    [ ] Walker    [ ] Leg/Arm prosthesis    [ ] Vest |
| [ ] Complex medical needs affecting placement    [X] CDC 128-C R12-07 | [ ] Other: _____    [ ] CDC 128-C(s) dated: 5-15-07 |

| ASSISTANCE NEEDED WITH ACTIVITIES OF DAILY LIVING: | OTHER DPP DESIGNATIONS: |
|---|---|
| [ ] Feeding or Eating  [ ] Bathing  [ ] Grooming  [ ] W/C transferring | [ ] NONE _____ |
| [ ] Toileting  [ ] Other: _____    [ ] CDC 128-C(s) dated: _____ | CODE    DATED    CODE    DATED |

**HOUSING RESTRICTIONS:** [X] Lower bunk  [X] No stairs  [X] No triple bunk. CDC 128-C(s) dated: _____

**SECTION F: EXCLUSIONS**

[X] VERIFICATION OF CLAIMED DISABILITY NOT CONFIRMED: My physical examination or other objective data DOES NOT SUPPORT *claimed* disability. (Explain in Comments Section and CDC 128-C dated Optometry 6-20-07)

[X] REMOVAL FROM A DPP CODE: Removal from previous DPP code: DNM (Explain in Comments Section and CDC 128-C dated 5-7-08)

[ ] REMOVAL FROM ENTIRE PROGRAM: Removal from DPP code(s). _____ (Explain in Comments Section and CDC 128-C dated: _____ )

**SECTION G: EFFECTIVE COMMUNICATION FACTORS**

[ ] Uses Sign Language Interpreter (SLI)    [ ] Reads Braille    [ ] Communicates with written notes    [ ] Requires large print or magnifier

[ ] Reads lips    [X] NO "EFFECTIVE COMMUNICATION" ISSUES OBSERVED OR DOCUMENTED IN THE UNIT HEALTH RECORD

**PHYSICIAN'S COMMENTS:** *(Focus on affected systems and functional limitations. No specific diagnosis or other confidential medical information.)*

Inmate observed to walk greater than 100 yards
but with a cane and with pause
Visual Acuity - uncorrected both eyes - 20/100, Corrected vision both
eyes 20/20 - Discontinue Vision impairment vest

| PHYSICIAN'S NAME (Print): H Newson | PHYSICIAN'S SIGNATURE: | DATE SIGNED: 5-7-08 |
| HEALTH CARE MANAGER'S/DESIGNEE'S NAME (Print): Michael Fox MD CPS | HEALTH CARE MANAGER'S/DESIGNEE'S SIGNATURE: _____ MD ___, CPS | DATE SIGNED: 5-7-08 |

NOTE: After review by the Health Care Manager or Chief Physician & Surgeon, health care staff shall retain green copy for the UHR, send the inmate copy via institutional mail...

7 r

STATE OF CALIFORNIA
**DISABILITY PLACEMENT PROGRAM VERIFICATION (DPPV)**
CDC 1845 (Rev. 01/04)

DEPARTMENT OF CORRECTIONS
*CHECK ALL APPLICABLE BOXES*

THIS FORM ONLY VERIFIES OR DISCONFIRMS CLAIMED PHYSICAL DISABILITIES LISTED IN SECTION B

| INMATE NAME: CASSO, Santiago | CDC NUMBER: K 79110 | INSTITUTION: DVI | HOUSING ASSIGNMENT: #123 | DATE FORM INITIATED: 05-09-05 |
|---|---|---|---|---|

*Sections A - B to be completed by licensed medical staff.*

| SECTION A: REASON FOR INITIATION OF FORM | SECTION B: DISABILITY BEING EVALUATED |
|---|---|
| ☑ Inmate self-identifies to staff ☐ Third party evaluation request | ☐ Blind/Vision Impaired ☐ Speech Impaired |
| ☐ Observation by staff ☐ Medical documentation or Central File information | ☐ Deaf/Hearing Impaired ☑ Mobility Impaired |

*Sections C - G to be completed by a physician only.*

| SECTION C: PERMANENT DISABILITIES IMPACTING PLACEMENT | SECTION D: PERMANENT DISABILITIES *NOT* IMPACTING PLACEMENT |
|---|---|
| ☐ **FULL TIME WHEELCHAIR USER - DPW** Requires wheelchair accessible housing and path of travel. | 1. NO CORRESPONDING CATEGORY |
| ☐ **INTERMITTENT WHEELCHAIR USER - DPO** Requires lower bunk, wheelchair accessible path of travel and *does not require* wheelchair accessible cell. | 2. NO CORRESPONDING CATEGORY |
| ☑ **MOBILITY IMPAIRMENT - With or Without Assistive Device** (Wheelchairs shall not be prescribed) - DPM Orthopedic, neurological or medical condition that substantially limits ambulation (cannot walk 100 yards on a level surface without pause). Requires lower bunk, no triple bunk, and no stairs in path of travel. | 3. ☐ MOBILITY IMPAIRMENT (Lower Extremities) - DNM Walks 100 yards without pause with or without assistive devices. ☐ No Housing Restrictions  ☐ See HOUSING RESTRICTIONS in Section E ☐ Requires relatively level terrain and no obstructions in path of travel. **Do not place at:** CCI, CMC-E, CRC, CTF-C, FSP, SCC I or II, SOL, or SQ. (CDC 128-C:_____) |
| ☐ **DEAF/HEARING IMPAIRMENT - DPH** Must rely on written communication, lip reading or signing as residual hearing, with assistive devices, will not enable them to hear, understand or localize emergency warnings or public address announcements. | 4. ☐ HEARING IMPAIRMENT - DNH With residual hearing at a functional level with hearing aid(s). |
| ☐ **BLIND/VISION IMPAIRMENT - DPV** Not correctable to central vision acuity of better than 20/200 with corrective lenses in at least one eye (See HOUSING RESTRICTIONS IN SECTION E). | 5. NO CORRESPONDING CATEGORY |
| ☐ **SPEECH IMPAIRMENT - DPS** Does not communicate effectively speaking or in writing. | 6. ☐ SPEECH IMPAIRMENT - DNS Does not communicate effectively speaking, but does when writing. |

**SECTION E: ADDITIONAL MEDICAL INFORMATION**

| SR ALERT: | HEALTH CARE APPLIANCE / IDENTIFICATION VEST: |
|---|---|
| ☐ Requires relatively level terrain and no obstructions in path of travel | ☑ Cane ☐ Crutch ☐ Walker ☐ Leg/Arm prosthesis ☑ Vest |
| ☐ Complex medical needs affecting placement ☐ CDC 128-C | ☐ Other:_____ ☑ CDC 128-C(s) dated: 5/9/05 |

| ASSISTANCE NEEDED WITH ACTIVITIES OF DAILY LIVING: | OTHER DPP DESIGNATIONS: |
|---|---|
| ☐ Feeding or Eating ☐ Bathing ☐ Grooming ☐ W/C transferring | ☐ NONE |
| ☐ Toileting ☐ Other:_____ ☐ CDC 128-C(s) dated:_____ | CODE  DATED  CODE  DATED |

HOUSING RESTRICTIONS: ☑ Lower bunk ☑ No stairs ☑ No triple bunk. CDC 128-C(s) dated: 5/9/05

**SECTION F: EXCLUSIONS**

☐ VERIFICATION OF CLAIMED DISABILITY NOT CONFIRMED: My physical examination or other objective data DOES NOT SUPPORT *claimed* disability. (Explain in Comments Section and CDC 128-C dated _____).

☐ REMOVAL FROM A DPP CODE: Removal from previous DPP code:_____. (Explain in Comments Section and CDC 128-C dated:_____.)

☐ REMOVAL FROM ENTIRE PROGRAM: Removal from DPP code(s):_____. (Explain in Comments Section and CDC 128-C dated:_____.)

**SECTION G: EFFECTIVE COMMUNICATION FACTORS**

| ☐ Uses Sign Language Interpreter (SLI) ☐ Reads Braille ☐ Communicates with written notes ☐ Requires large print or magnifier |
|---|
| ☐ Reads lips ☑ NO "EFFECTIVE COMMUNICATION" ISSUES OBSERVED OR DOCUMENTED IN THE UNIT HEALTH RECORD |

PHYSICIAN'S COMMENTS: *(Focus on affected systems and functional limitations. No specific diagnosis or other confidential medical information.)*
Use Cane - Severe Osteoarthritis (L) hip
Candidate for total hip replacement

| PHYSICIAN'S NAME (Print) MICHAEL D. FIX MD | PHYSICIAN'S SIGNATURE | DATE SIGNED 5-09-05 |
|---|---|---|
| HEALTH CARE MANAGER'S / DESIGNEE'S NAME (Print) | HEALTH CARE MANAGER'S / DESIGNEE'S SIGNATURE | DATE SIGNED 5/17/05 |

NOTE: After review by the Health Care Manager or Chief Physician & Surgeon, health care staff shall retain green copy for the UHR, send the inmate copy via institutional mail, & route the original and remaining copies to the C&PR/RC CC-III for tracking and further distribution according to the instructions below.

| INMATE : | **CASSO, SANTIAGO** | CDC # | **K79110** | HOUSING : | **FA-B2-181L** |

This inmate is PERMANENTLY MOBILITY IMPAIRED and uses a CANE to assist with ambulation (DPM). He cannot walk 100 yards or up a flight of stairs without pausing with the use of aids. REQUIRES LOWER BUNK/LOWER TIER HOUSING. NO STAIRS, NO TRIPLE BUNK. THIS DISABILITY IMPACTS PLACEMENT. LIMITATIONS: No prolonged Standing/Walking 50% of the time in assignment. No REPETITIVE digging, bending, or lifting over 15 lbs. Any misuse of this chrono, which is validated by documentation, will result in it being rescinded by the CP&S/CMO.

CC   Health Record
     C-File
     Inmate Assignment
     CCI/CCII
     Housing Officer
     Inmate

Signature: D. Kyle, D.O.

Arrival Date: 6/21/2004

| Date : **06/25/04** | *HEALTH SERVICES CHRONO* | **SATF** CDC-128-C |

NAME and NUMBER          CASSO, Santiago          K-79110          1-EY-41          CDC-128-C

Lower bunk / lower tier x 6 months.
Cane for ambulatory support x 3 months.

Orig:   Central File                          L. Singh, M.D.
cc:     Health Record                         Staff Physician
        Assignment Lt.
        Block Sergeant
        Inmate

10-30-03 (T: 10-31-03 pjc)          San Quentin

DATE                                          MEDICAL   PSYCHIATRIC   DENTAL

---

NAME and NUMBER

          CASSO, Santiago          K-79110          1-EY-41          CDC-128-

**Restrictions to full duty x 6 months:** Not at all: Bending, squatting, climbing, lifting weights > 10 pounds.

Orig.   Central File                          L. Singh, M.D.
cc:     Health Record                         Staff Physician
        Assignment Lt.
        Block Sergeant
        Inmate

## COLLECTION SHEET



**NAME and NUMBER**     CASSO, Santiago    K-79110    1-C-17    1-C-30    CDC-128-C

**Restrictions to full duty x 3 months:** <u>Not at all:</u> Walking, standing, lifting/carrying, bending, squatting, kneeling, climbing stairs.

**MEDICAL REASON:** DJD L-Spine and spinal stenosis (MRI). Using cane for ambulatory support.

Orig.  Central File
cc:  Health Record
     Assignment Lt.
     Block Sergeant
     Inmate

I. Singh, M.D.
Staff Physician

Reviewed by CMO    APR 2 4 2002

**DATE**   03-28-02 (T: 4-12-02 pjc)    San Quentin

MEDICAL — PSYCHIATRIC — DENTAL

---

**NAME and NUMBER**     CASSO, Santiago G.     K-79110     1-C-17S    1-C-30S    CDC-128-C

Lower bunk and tier x 90 days.
1 Cane x 90 days.

**MEDICAL REASON:** Spinal stenosis.

Orig.  Central File
cc:  Health Record
     Assignment Lt.
     Block Sergeant
     Inmate

T. Bui, M.D.
Staff Physician

Reviewed by CMO    MAR 2 8 2002

**DATE**   03-12-02 (T: 3-27-02 pjc)    San Quentin

MEDICAL — PSYCHIATRIC — DENTAL

CDC-128-C

NAME and NUMBER     CASSO, Santiago     K-79110     1-EY-4     ℞ - C

Inmate should be allowed to wear personal athletic shoes at all times x length of stay (Renewal of pre-existing podiatry chrono).

Orig: Central File
cc: Health Record
    Block Sergeant
    Inmate

T. Martin, D.O.
Staff Physician

Reviewed by CMO

DATE   8-22-02 (T 08-28-02 pjc)     San Quentin     MEDICAL   PSYCHIATRIC   DENTAL

---

NAME and NUMBER     CASSO, Santiago G     K-79110     1-EY-4     CDC-128-C

1st tier / low bunk x 3 months
Cane for ambulation x 3 months

MEDICAL REASON: DJD stenosis

Orig: Central File
cc: Health Record
    Assignment Lt.
    Block Sergeant
    Inmate

L. Martin, D.O.
Staff Physician

JUL 2 2 2002

Reviewed by CMO

07-16-02 (T 7-18-02 pjc)   San Quentin     MEDICAL   PSYCHIATRIC   DENTAL

**NAME: CASSO, Santiago**    **CDC#: K-79110**    **Hsg: (INF-14A) 10-142U**

MEDICAL PROBLEM:    Due to a medical condition this inmate needs
the following:

RECOMMENDATION:    Low Bunk/Low Tier, walker and shower chair.

DURATION:    While in Ad Seg unit.

**A. Noriega, M.D.**
Physician and Surgeon

**K. Low, M.D.**    **Date**  4/26/99
Chief Physician and Surgeon (A

Orig: Central file
Cc: Health record, Inmate, CCII, Fac Capt

Date:    4/23/99
Medical    **CSP-Solano**

---

DISTRIBUTION:

Medical File

**R. ALANDY, RN**
Signature

Date: 04/28/1999

MEDICAL-PSYCHIATRIC-DENTAL

---

CDC-128C

NAME and NUMBER  Casso    K79110    HOUSING  10-131 8

TB SKIN TESTING CHRONO

INMATE TB ALERT CODE:  32    READING _____ mm

[X] No special transportation precautions required.
[ ] Special transportation precautions required.
[ ] Six (6) month medication program completed this date.

DISTRIBUTION: **MEDICAL FILE**

Central File
Inmate    Transcribed
    from 5-4-98
DATE: 4-7-99    Signature
    **MEDICAL**

Ready to I— _AVE 6/25/07_

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS**: A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

## A. HOUSING

| | | | | |
|---|---|---|---|---|
| None | | Bottom Bunk | (P) / T | 40 |
| Barrier Free/Wheelchair Access | P / T | Single Cell (See 128-C date: _____ ) | P / T | |
| Ground Floor Cell | (P) / T  40 | Permanent OHU / CTC (circle one) | P / T | |
| Continuous Powered Generator | P / T | Other _____ | P / T | |

## B. MEDICAL EQUIPMENT/SUPPLIES

| | | | | |
|---|---|---|---|---|
| None | | Wheelchair: (type) _____ | P / T | |
| Limb Prosthesis | P / T | Contact Lens(es) & Supplies | P / T | |
| Brace | P / T | Hearing Aid | P / T | |
| Crutches | P / T | Special Garment: | | |
| Cane: (type) Wood | (P) / T  40 | (specify) _____ | P / T | |
| Walker | P / T | Rx. Glasses: _____ | P / T | |
| Dressing/Catheter/Colostomy Supplies | P / T | Cotton Bedding | P / T | |
| Shoe: (specify) _____ | P / T | Extra Mattress | P / T | |
| Dialysis Peritoneal | P / T | Other _____ | P / T | |

## C. OTHER

| | | | |
|---|---|---|---|
| None | | Therapeutic Diet: (specify) | P / T |
| Attendant to assist with meal access and other movement inside the institution. | P / T | | |
| Attendant will not feed or lift the inmate/patient or perform elements of personal hygiene. | | Communication Assistance | P / T |
| | | Transport Vehicle with Lift | P / T |
| | | Short Beard | P / T |
| Wheelchair Accessible Table | P / T | Other _____ | P / T |

## D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments? ☑ Yes  ☐ No
If yes, specify: _Mobility umpaired  Spinal Stenesis_
_No walking w/o cane_

| INSTITUTION  DVI | COMPLETED BY (PRINT NAME) _____ | TITLE  RN |
|---|---|---|
| SIGNATURE _____ | DATE  5-15-07 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| HCM/CMO SIGNATURE _____ | DATE  6/6/07 | _Cusso Santiago_ |
| (CIRCLE ONE)  (APPROVED) / DENIED | | _K79110_ |
| | | _12-11-54_ |

COMPREHENSIVE ACCOMMODATION
CHRONO

STATE OF CALIFORNIA
RECEPTION CENTER MEDICAL CLEARANCE / RESTRICTION INFORMATION CHRONO
CDCR 128-C-1 (Rev 04/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDCR NUMBER: K79110
NAME: CASSO, SANTIAGO

**MEDICAL ELIGIBILITY:**
- ☐ FULL DUTY
- ☐ CAMP
- ☐ CCF
- ☐ RESTRICTED/LIGHT DUTY
- ☑ MEDICALLY UNASSIGNED
  - ☐ SHORT TERM
  - ☐ LONG TERM
- ☐ WELL HANDICAPPED (Program Eligible)
- ☐ FOOD HANDLING
  - ☐ CLEARED
  - ☐ NOT CLEARED

**MEDICAL RESTRICTIONS:**
- ☐ COMMUNICABLE DISEASE
  - ☐ SEIZURE DISORDER DATE OF LAST SEIZURE:
  - ☐ CHRONIC INFECTIOUS DISEASE, GROUP I, II, III, IV.
  - ☐ COMMUNICABLE DISEASE (i.e., TB, HEPATITIS, SYPHILIS)
  - ☐ ROUTINE FOLLOW-UP NEEDED
  - ☐ URGENT FOLLOW-UP NEEDED

OTHER RESTRICTIONS

- ☐ **HEARING IMPAIRED**
  - ☐ HAS HEARING AID
  - ☐ NEEDS HEARING AID
- ☐ SERIOUS VISION PROBLEM
- ☐ BLIND
- ☐ MEDICATION ALLERGIES
  - ☐ YES
  - ☐ NO

**CHRONIC DISEASE:**
- ☐ MEDICATION REQUIRED
- ☐ DIABETIC
  - ☐ ORAL    ☐ INJECTION
- ☐ RESPIRATORY (e.g., asthma)
  - ☐ MEDICATION REQUIRED
- ☐ HEART DISEASE/HYPERTENSION
  - ☐ MEDICATION REQUIRED
- ☐ ORTHOPEDIC PROBLEM (Debilitating)
  - ☐ LOWER BUNK NEEDED
  - ☐ LOWER TIER NEEDED

- ☐ **MOBILITY IMPAIRED**
  - ☐ PARAPLEGIC    ☐ QUADRIPLEGIC
  - ☐ WHEELCHAIR    ☐ WALKER
  - ☐ CANE
- ☐ AMPUTEE
  - ☐ LEGS  ☐ LEFT  ☐ RIGHT
  - ☐ ARMS  ☐ LEFT  ☐ RIGHT
- ☐ PROSTHESIS
  - ☐ FULL    ☐ PARTIAL
- ☒ **PSYCHIATRIC CONDITION**  *Completed 3/27/08 CVB*
  - ☐ CLEARED
  - ☒ NEEDS EVALUATION
- ☐ PSYCHIATRIC MEDICATION NEEDED
  - ☐ YES
  - ☑ NO
- ☑ **DENTAL PRIORITY CLASSIFICATION**
  - ☐ 1A  ☐ 1B  ☐ 1C  ☐ 2  ☒ 3  ☐ 4  ☐ 5
- ☐ PATIENT REFUSED SCREENING   3/24/08
  *[signature]*
- ☐ **PREGNANT**
  - ☐ TRIMESTER:  ☐ 1  ☐ 2  ☐ 3

DISTRIBUTION:
ORIGINAL - C-FILE        COPY - CDCR HEALTH RECORD
COPY - C&PR              COPY - INMATE

INSTITUTION: SQ
PHYSICIAN'S SIGNATURE AND TITLE *[signature] RN*
DATE: 3/24/08

---

INMATE: CASSO, SANTIAGO
CDC NUMBER: K79110
HOUSING: A 1 00000000007L
DOB: 12/11/1954

THIS INMATE HAS A CURRENT TB CODE OF **32**

*[signature]*
RENILLO GULLEM, LVN

CC: C FILE (ORIGINAL)
    MEDICAL FILE

PUBLIC HEALTH SQSP

ARRIVAL DATE : 3/24/2008

DATE: **3/27/08**        SQ TB CHRONO        CDC-128-C

Print Form

State of California - Health and Human Services Agency                              Department of Mental Health

**NOTICE OF CERTIFICATION**
MH 1760 (Rev. 08/04)

Confidential Patient Information
See Welfare & Institutions Code
Section 5328 and Penal Code 11142

HPAA Privacy Rule
5 C.F.R. § 164.508

The authorized agency providing evaluation services in the County of _____Alameda_____ has evaluated the condition of:

Name | Casso, Santiago

Address | 42836 Gatewood street fremont

Marital Status | S          Date of Birth | 12/11/54          Sex | m

We, the undersigned, allege that the above-named person is, as a result of a mental disorder ~~or impairment by chronic alcoholism~~ (Mark all that apply):

☐ A danger to others          ☒ A danger to himself or herself          ☒ Gravely disabled as defined in paragraph (1) of subdivision (h) or subdivision (1) of Section 5008 of the Welfare and Institutions Code

*Strike out all inapplicable classifications.

The specific facts which form the basis for our opinion that the above-named person meets one or more of the classifications indicated above are as follows:

Recent worsening of depression due to psychosocial stressors, plus suicidal ideation with plan to overdose

The above-named person has been informed of this evaluation, and has been advised of the need for, but has not been able or willing to accept treatment on a voluntary basis, or to accept referral to, the following services:

John George Psychiatric Pavilion(Alameda County Medical Center) or any other county designated facility.

We, therefore, certify the above-named person to receive intensive treatment related to the mental disorder ~~or impairment by chronic alcoholism~~

beginning this 29th day of February, 20 8, in the intensive treatment facility herein named | John George Psychiatric Pavilion (Alameda County Medical Center) or any other county designated facility

Feb 29, 2008
_____
Date

Name | M. Chong  D.O.          Signature

Name | C. Sue  MD          Signature

I hereby state that I delivered a copy of this notice this day to the above-named person and that I informed him or her that unless judicial review is requested, a certification review hearing will be held within four days of the date on which the person is certified for a period of intensive treatment and that an attorney or advocate will visit him or her to provide assistance in preparing for the hearing or to answer questions regarding his or her commitment or to provide other assistance. The court has been notified of this certification on this day.

Name | T. Howard          Signature | R Chowdhary Rn          10/29/08

Copies:    Person Certified-Personally delivered
           Person's          Attorney/Advocate

3-1-08   1700

State of California

Department of Corrections and Rehabilitation
Inmate Appeals Branch

# **M**emorandum

Date   :   April 10, 2008

To   :   CASSO, SANTIAGO   K79110
Deuel Vocational Institution
P.O. Box 400
Tracy, CA  95376

Subject:   **APPEAL ACTIVITY**

The attached page(s) lists a summary of your recent appeal history and status of appeals still under review.

N. GRANNIS, Chief
Inmate Appeals Branch

Attachment(s)

Inmate Appeals Branch

04/10/2008

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
Inmate / Parolee Appeals Tracking System - Level III

Appellant Information
CDCR Number: K79110

Sorted By: Last Name

| CDCR Number | Appellant Name | Location | Arrival Date |
|---|---|---|---|
| K79110 | CASSO, SANTIAGO | DVI | 04/03/2008 |

**Accepted Appeals**

| IAB Number | Issue | Inst. Log Number | Closed Date | Disposition |
|---|---|---|---|---|
| 0306578 | ADA | SQ-03-03360 | 01/28/2004 | DENIED |
| 0308899 | PROPERTY | SQ-03-03420 | 05/04/2004 | DENIED |
| 0309213 | ADA | SQ-04-00182 | 04/01/2004 | DENIED |
| 0309768 | LIVING CONDITIONS | SQ-04-00013 | 06/10/2004 | DENIED |
| 0310512 | MAIL | SQ-04-00088 | 06/28/2004 | DENIED |
| 0310587 | MAIL | SQ-04-00033 | 06/28/2004 | DENIED |
| 0310592 | MAIL | SQ-04-00407 | 06/28/2004 | DENIED |
| 0313661 | PROPERTY | SQ-03-03497 | 09/17/2004 | DENIED |
| 0704649 | ADA | DVI-07-01339<br>ASP-07-01715 | 10/05/2007 | DENIED |
| 9804927 | STAFF COMPLAINTS | SOL-98-01487 | 03/05/1999 | DENIED |
| 9807016 | DISCIPLINARY | SOL-98-01962 | 04/30/1999 | GRANTED IN PART |
| 9807211 | PROPERTY | SOL-98-02039 | 08/18/1999 | DENIED |

**Screen Outs**

| IAB Number | Issue | Inst. Log Number | Screened Out | Reason |
|---|---|---|---|---|
| 0308899 | PROPERTY | SQ-03-03420 | 01/07/2004 | MISSING DOCUMENTATION |
| 0313661 | PROPERTY | SQ-03-03497 | 03/08/2004 | |
| 0313661 | PROPERTY | SQ-03-03497 | 01/16/2004 | MISSING DOCUMENTATION |
| 0721007 | RE-ENTRY/PAROLE | REG2-07-01503 | 03/18/2008 | ONLY ORIGINAL APPEAL ACCEPTED AT DL REVIEW |
| 0722991 | OTHER | DVI-07-00055 | 04/04/2008 | APPEAL NOT BEEN ACCEPTED AT DIRECTOR'S LEVEL |

Page: 1

Inmate Appeals Branch

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

Inmate / Parolee Appeals Tracking System - Level III

04/10/2008

| CDCR Number | Appellant Name | Location | Arrival Date | |
|---|---|---|---|---|
| K79110 | CASSO, SANTIAGO | DVI | 04/03/2008 | |
| 5032797 | CASE INFO/RECORDS | DVI-06-1989 | 01/18/2007 | MUST BE COMPLETED THROUGH 2ND LEVEL |
| 5040655 | DISCIPLINARY | 00-1773-SQ | 08/14/2000 | APPEALING ACTION/DECISION NOT YET OCCURRED |
| 5042883 | DISCIPLINARY | ASP-00-01321 | 10/12/2000 | MUST BE COMPLETED THROUGH 2ND LEVEL |
| | | | | ONLY ORIGINAL APPEAL ACCEPTED AT DL REVIEW |
| 5043336 | OTHER | | 10/06/2000 | MUST BE COMPLETED THROUGH 2ND LEVEL |
| 5063083 | ADA | SQ-02-832 | 06/24/2002 | ONLY ORIGINAL APPEAL ACCEPTED AT DL REVIEW |
| 5091556 | PROPERTY | | 04/02/2004 | MUST BE COMPLETED THROUGH 2ND LEVEL |
| 5093279 | CASE INFO/RECORDS | SQ-04-759 | 05/12/2004 | MUST BE COMPLETED THROUGH 2ND LEVEL |
| 5096003 | ADA | LAC-04-01121 | 06/22/2004 | MISSING DOCUMENTATION |
| 5096627 | CASE INFO/RECORDS | LAC-B-04-01283 | 07/13/2004 | MUST BE COMPLETED THROUGH 2ND LEVEL |
| 5098512 | CASE INFO/RECORDS | LAC-B-04-01436 | 08/20/2004 | MISSING DOCUMENTATION |
| 5101591 | DISCIPLINARY | SATF-04-03638 | 10/01/2004 | MISSING DOCUMENTATION |

Exibit-P2

*Exibit-P2*

Check Center NEWARK
5710 THORNTON AVE
NEWARK, CA  94560
(510) 794-1099

SANTIAGO CASSO JR          TELLER  NMC
Receipt # 2865866        10/5/2007 3:28:52 PM

| Item | Qty | Amount | Fee | Total |
|------|-----|--------|-----|-------|
| UST1 | 1 | $856.00 | 21.32 | 834.68 |
| Total for Checks | | $856.00 | 21.32 | 834.68 |

| | |
|---|---|
| Tax | $0.00 |
| Less Checks | $0.00 |
| Amount Due | $834.68 |
| Cash Tendered | $0.00 |
| Cash Paid to Customer | ($834.68) |

**EASY MONEY**
Winning $1,000 in cash has never been so
easy. When cashing a check in August or
September you could win great CASH PRIZES
our Easy Money Sweepstakes.      >>> ASK
US FOR DETAILS <<<

WE DO NOT DISCLOSE ANY NON PUBLIC
INFORMATION TO ANYONE, EXCEPT
AS PERMITTED BY LAW.     Thank You

STORE HOURS: Mon.- Fri. 8am - 9pm
Saturday 8am - 8pm
Sunday 10am - 4pm

I Santiago G. Casso Jr., ssn# 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, D.O.B. 12/11/54
declare under penalty of perjury under the laws of the
State of California that the above reciete is a zerox copy
of the Petitioners monthly income on ssI disability benifits.
Date:

Santiago G. Casso Jr.

Santiago G. Casso Jr.

SOCIAL SECURITY ADMINISTRATION
SUPPLEMENTAL SECURITY INCOME
Important Information

Office Address:
SOCIAL SECURITY
SUITE 100
3100 MOWRY AVE
FREMONT CA 94538

SANTIAGO G CASSO JR
~~42836 GATEWOOD ST~~
~~FREMONT, CA 94538~~
*37461 Cherry St., APT-B*
*Newark, Ca. 94560*

Office Hours: 09:00 AM - 04:30 PM

Date: August 31, 2007

Social Security Number:

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

Telephone: 510-797-7216

Extension: 203

On August 31, 2007, we talked with you and completed SANTIAGO G CASSO JR'S
redetermination for Supplemental Security Income (SSI). We have stored his
~~redetermination electronically in our records. Attached is a summary of your~~
statements for your review.

What You Need To Do

o  Review the redetermination summary to ensure we recorded your statements
   correctly.

o  If you agree with all your statements, you may retain the redetermination
   summary for his records.

o  If you disagree with any of your statements, you should contact us within
   10 days after the date of this notice to let us know.

o  Mail or bring the information requested below along with this notice. If
   you mail the information, please use the enclosed postage paid envelope.

IMPORTANT REMINDER

Penalty of Perjury

You declared under penalty of perjury that all the information on this summary
is true and correct to the best of your knowledge. Anyone who knowingly gives a
false or misleading statement about a material fact in a redetermination, or
causes someone else to do so, commits a crime and may be sent to prison or may
face other penalties, or both.

- You should receive the check no later than September 15, 2007.  Your regular monthly check of $856.00 will then be issued about the first day of the month.

- Since the advance payment against your Supplemental Security Income has been fully accounted for, we are sending you a check for $856.00 for the month of October 2007. This check should be received about the first of the month. After that, your check will be for your regular monthly payment amount.

**Your Payment Is Based On These Facts**

- **Based on the facts we have, you entered a facility in September 2006. Our records show that you were in this facility for each full month October 2006 through December 2006.  Usually, SSI payments are stopped for each month that:**

  – You are a patient for a full month in an institution run by the Federal, State, or local government. This includes some hospitals, nursing homes, other care facilities or prisons; and

  – If you have Medicaid, it does not pay for more than half the cost of your care.

  You could be eligible for continued payments for any of the first 3 full months that you are a patient if:

  – We would have stopped your SSI payment for any of these months; and

  – You are eligible for an SSI payment in the month before we would have stopped your SSI payment; and

  – You are in a medical facility; and

  – You give us proof that you have home expenses that you have to continue to pay; and

  – We have proof that your doctor expects you to stay in a medical facility for less than 91 days.

  The proofs must be received or postmarked by the 90th day of your stay in the facility or by the day of your release, if earlier.

  You do not meet all these requirements because you were not in a medical facility.

- **The amount of SSI we pay depends on your living arrangements.  Your living arrangements are where you live, with whom you live, and how your food and shelter expenses are paid.  Based on the information we have, your Federal living arrangement is:**

SSA-L8100

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                                            Page  5 of  6
09/11/2007

## HOW WE FIGURED YOUR PAYMENT FOR September 2007



### Your Payment Amount

| | |
|---|---|
| The most Federal SSI money the law allows us to pay | $623.00 |
| We didn't subtract (-) any income from Federal SSI money | − 0.00 |
| Federal SSI money | $623.00 |
| Plus (+) the most State SSI money the law allows us to pay | +233.00 |
| We didn't subtract (-) any income from State SSI money | − 0.00 |

**Total SSI Payment for September 2007**        $856.00

SSA-L8151

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                                          Page 6 of 6
09/11/2007

## HOW WE FIGURED YOUR PAYMENT FOR October 2007 ON

### Your Payment Amount

| | |
|---|---|
| The most Federal SSI money the law allows us to pay | $623.00 |
| We didn't subtract (-) any income from Federal SSI money | - 0.00 |
| Federal SSI money | $623.00 |
| Plus (+) the most State SSI money the law allows us to pay | +233.00 |
| We didn't subtract (-) any income from State SSI money | - 0.00 |

**Total Monthly SSI Payment**
**for October 2007 on**                              $856.00

SSA-L8151

Santiago G. Casso Jr.
K-74710
D.V.I., P.O.Box 600
Tracy, Ca., 95378-0600
1-Dorm #12

RECEIVED

JUL - 7 2008

**RICHARD W. WIEKING**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

STATE PRISON
GENERATED MAIL

Clerk of the United States District
Court For Northern District of
California
450 Golden Gate Avenue
Box 36060
San Francisco, Ca. 94102

STATE PRISON
GENERATED MAIL

LEGAL MAIL

7-1-08

C. O. P. DAVIS

LEGAL MAIL

AIL

LEGAL MAIL